542 A.2d 373

**Carol NIGHTINGALE and Albert James Joseph Myers, Sr.**

v.

**STATE of Maryland.**

**No. 98, Sept. Term, 1987.**

Court of Appeals of Maryland.

June 10, 1988.

**700**

Mark Colvin, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellants.

Norman L. Smith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ., and CHARLES E. ORTH, JR., Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

ADKINS, Judge.

The question put to us in these cases is whether separate convictions and sentences for both child abuse and second, third, or fourth degree sexual offense [are] improper where the State relies on and proves the sexual offense to sustain the child abuse conviction?

The Court of Special Appeals answered this question in the negative. Although we cannot determine with precision whether the convictions of child abuse were sustained by the sexual offense convictions, that might have been the case. Faced with this sort of ambiguity, we shall reverse the Court of Special Appeals.

We have two petitioners before us. One, Carol Nightingale (Nightingale), was tried in the Circuit Court for Carroll County on a six-count criminal information that charged him with second degree rape (Art. 27, § 463(a)(3)), incest (Art. 27, § 335), child abuse (Art. 27, § 35A), common law battery, perverted practice (Art. 27, § 554), and second

degree sexual offense (Art. 27, § 464A(a)(3)).[1]  Each crime was alleged to have been committed "on or about 1977 to 1982."  The victim of each offense was named as his daughter, "a child under 14 years of age, [Nightingale] being at least four years older than the victim...."  The daughter testified that on various occasions during the years in question her father had engaged in sexual activity with her, beginning with fondling and culminating with vaginal intercourse, fellatio, and cunnilingus.  The court directed judgments of acquittal on the battery and perverted practices charges.  The jury acquitted on the second degree rape and incest charges.  It convicted Nightingale of child abuse and sexual offense in the second degree.  He received two consecutive 15–year sentences.  The Court of Special Appeals affirmed in an unreported opinion. *Nightingale v. State*, No. 1380, Sept. Term, 1986 (filed 18 May 1987).

The second petitioner, Albert James Joseph Myers, Sr., (Myers), was tried in the Circuit Court for Frederick County on three consolidated criminal informations.  Number 7317 charged him with second degree (Art. 27, § 464A(a)(3)), third degree (Art. 27, § 464B(a)(3)), and fourth degree (Art. 27, § 464C(a)(1)) sexual offense, and child abuse (Art. 27, § 35A).  Each of these crimes was alleged to have been committed "between November, 1983 through February, 1985" on the person of his daughter, "who was then and there under fourteen ... years of age and the said ... Myers being four ... or more years older...."  Number 7319 charged Myers with child abuse and third and fourth degree sexual offenses "on or about August 3, 1985," the victim again being named as his daughter.[2]

At trial the daughter testified that Myers had engaged in sexual activity with her that included fondling, fellatio, and

---

**1.**  All Art. 27 references are to Md. Code (1987 Repl. Vol.) unless otherwise noted.

**2.**  As to the third charging document, No. 7318, Myers was acquitted of all charges.

anal intercourse. The 3 August 1985 charges involved a single incident in which, the daughter said, Myers had thrust his hand inside her panties and touched her vagina. The jury convicted Myers of all charges. He received four concurrent sentences under information No. 7317, the longest sentence being 20 years for second degree sexual offense. Under No. 7319 he received three concurrent sentences, the longest being 15 years for child abuse, with 10 years suspended. The No. 7319 sentences were made consecutive to those imposed in No. 7317. The Court of Special Appeals affirmed in an unreported opinion. *Myers v. State*, No. 1513, Sept. Term, 1986 (filed 19 May 1987).

The Public Defender filed a certiorari petition encompassing both cases and posing the question we have quoted at the outset of this opinion. We granted the petition. 310 Md. 567, 530 A.2d 742 (1987).

Nightingale and Myers argue that for double jeopardy purposes, their convictions and sentences for child abuse and sexual offenses cannot stand because the crimes are the same under the required evidence test of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), as applied by us in cases such as *State v. Frye*, 283 Md. 709, 393 A.2d 1372 (1978), *Newton v. State*, 280 Md. 260, 373 A.2d 262 (1977), and *Thomas v. State*, 277 Md. 257, 353 A.2d 240 (1976). In the alternative, petitioners urge us to invoke the "rule of lenity" we recently discussed in *Dillsworth v. State*, 308 Md. 354, 519 A.2d 1269 (1987). The State insists that Nightingale and Myers are not entitled to the benefit of either rule. We need address only petitioners's first contention.

The double jeopardy clause of the fifth amendment to the United States Constitution provides, in part, that no one shall "be subject for the same offence to be twice put in jeopardy of life or limb...." It applies to the states. *Benton v. Maryland*, 395 U.S. 784, 787, 89 S.Ct. 2056, 2058, 23 L.Ed.2d 707, 711 (1969). In the context of the case now before us, it protects against multiple convictions and sentences for the same offense. *Newton*, 280 Md. at 263–265,

373 A.2d at 264–265. Under "both federal double jeopardy principles and Maryland merger law, the test for determining the identity of offenses is the required evidence test." *Id.* at 268, 373 A.2d at 266. This test we stated thus in *Newton:*

> If each offense requires proof of a fact which the other does not, the offenses are not the same and do not merge. However, if only one offense requires proof of a fact which the other does not, the offenses are deemed the same, and separate sentences for each offense are prohibited.

280 Md. at 268, 373 A.2d at 266. We turn to the several offenses involved in this case in order to apply the test.

Article 27, § 35A, proscribes child abuse.[3] The elements of this offense, in its broadest aspect, are that (1) an individual under the age of 18 (2) sustain physical injury or sexual abuse (3) at the hands of a parent or someone responsible for care, custody, or supervision of the victim. The sexual offenses, in their several degrees, are somewhat more complex. The second, third, and fourth degree offenses involved here (Art. 27, §§ 464A(a)(3),[4] 464B(a)(3),[5]

---

3. The text of § 35A provides:
   (a)(1) In this section ...
   (2) *"Abuse"* means:
      (i) The sustaining of physical injury by a child as a result of cruel or inhumane treatment or as a result of a malicious act by any parent or other person who has permanent or temporary care or custody or responsibility for supervision of a child under circumstances that indicate that the child's health or welfare is harmed or threatened thereby; or
      (ii) Sexual abuse of a child, whether physical injuries are sustained or not.
   (3) *"Child"* means any individual under the age of 18 years.
   (4)(i) *"Sexual abuse"* means any act that involves sexual molestation or exploitation of a child by a parent or other person who has permanent or temporary care or custody or responsibility for supervision of a child.
      (ii) "Sexual abuse" includes, but is not limited to:
      1. Incest, rape, or *sexual offense in any degree;*
      2. Sodomy; and
      3. Unnatural or perverted sexual practices [emphasis supplied].

4. Section 464A provides, in pertinent part:

5. See note 5 on page 704.

and 464C(a)(1),[6] all have a common element: that the activity be for the sexual arousal, gratification or abuse of the actor or the victim. A sexual offense in the second degree (under § 464A(a)(3)) must involve a "sexual act" as defined in the statute, and a specified age differential between actor and victim, *see* n. 4, *supra.* Second and third degree

---

(a) A person is guilty of a sexual offense in the second degree if the person engages in a sexual act with another person:

\*   \*   \*   \*   \*   \*

(3) Under 14 years of age and the person performing the sexual act is four or more years older than the victim.

"Sexual act," for purposes of this section, is cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse. Emission of semen is not required. Penetration, however slight, is evidence of anal intercourse. Sexual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body if the penetration can be reasonably construed as being for the purposes of sexual arousal or gratification or for abuse of either party and if the penetration is not for accepted medical purposes.

Art. 27, § 461(e).

5. Section 464B provides in pertinent part:

(a) A person is guilty of a sexual offense in the third degree if the person engages in sexual contact:

\*   \*   \*   \*   \*   \*

(3) With another person who is under 14 years of age and the person performing the sexual contact is four or more years older than the victim.

For purposes of § 464B (and § 464C, n. 6, *infra* ), "sexual contact" means:

the intentional touching of any part of the victim's or actor's anal or genital areas or other intimate parts for the purposes of sexual arousal or gratification or for abuse of either party and includes the penetration, however slight, by any part of a person's body, other than the penis, mouth, or tongue, into the genital or anal opening of another persons' body if that penetration can be reasonably construed as being for the purposes of sexual arousal or gratification or for abuse of either party. It does not include acts commonly expressive of familial or friendly affection, or acts for accepted medical purposes.

Art. 27, § 461(f).

6. Section 464C provides in pertinent part:

(a) A person is guilty of a sexual offense in the fourth degree if the person engages:

(1) In sexual contact with another person against the will and without the consent of the other person.

As to the meaning of "sexual contact," *see* n. 5, *supra.*

offenses require "sexual contact" as defined, and either an age differential (§ 464B(a)(3)) or lack of consent (§ 464C(a)(1)); *see* nn. 5 & 6, *supra.*

It is apparent, then, that child abuse, taken in its broadest sense, involves certain elements (*e.g.*, physical harm and a particular relationship between actor and victim) that none of the sexual offenses do. By the same token, each of the sexual offenses requires some elements (*e.g.*, performance of a sexual act or sexual contact and sexual arousal or gratification) that child abuse does not. But the analysis does not end at this point. When a multi-purpose criminal statute is involved, we refine it by looking at the alternative elements relevant to the case at hand.

We took this approach in *Newton, supra,* in which we held that an underlying felony "and murder committed in the perpetration of that felony constitute, under the required evidence test, double punishment for the same offense in violation of the Fifth Amendment's double jeopardy clause." 280 Md. at 273–274, 373 A.2d at 269 [footnote omitted]. First degree murder may be committed in various ways, for example by a "wilful, deliberate and premeditated killing" (Art. 27, § 407) or by a killing committed during the commission of a felony enumerated in Article 27, § 410. There are other types of first degree murder as well. *See* Art. 27, §§ 408–409. Commission of a felony is not an element of premeditated murder; killing is not an element of any of the § 410 felonies. Nevertheless, in *Newton* we looked to the alternative elements involved in the felony murder, and concluded that there was merger. *See also Whalen v. United States,* 445 U.S. 684, 694, 100 S.Ct. 1432, 1439, 63 L.Ed.2d 715, 725 (1980), and *Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977).

In *Thomas v. State, supra,* we employed the same sort of analysis. The issue there was whether Art. 27, § 349 and Art. 66½, § 4–102 (now § 14–102 of the Transportation Article) involved the same offense for double jeopardy purposes. The latter section proscribed driving an automo-

bile without the owner's consent "with intent temporarily to deprive the owner of" possession of the vehicle. The former made it a crime for a person to "enter or [be] upon the premises of any other person ... [to] against the will and consent of said person ... wilfully take and carry away ... any ... vehicle...." It was noted that § 349 in one aspect required "entry" and could also apply to the taking of property other than motor vehicles, whereas § 4–102 required driving and applied only to motor vehicles. The offenses, the State argued, were not the same. We disagreed. Judge Eldridge, for the Court, noted that § 349's provisions were in the disjunctive. "The offense can be established either by showing an entry and a taking or by showing a taking of a vehicle from wherever it may be located." 277 Md. at 269, 353 A.2d at 247–248. Thus, despite differences in the statutes, under the circumstances of the case and for double jeopardy purposes, "the § 4–102 offense and the § 349 offense as charged in the indictment in this case are deemed to be the same" because "the same evidence necessary to convict on the § 4–102 offense would always be sufficient to establish a § 349 offense such as alleged here." *Id.* at 270, 353 A.2d at 248. *See also Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980).

In *State v. Boozer*, 304 Md. 98, 497 A.2d 1129 (1985), we recognized that Art. 27, § 464C was not a statute that created but a single offense; instead, it proscribes several different types of conduct, which may be treated as separate statutory offenses for double jeopardy purposes. The same is clearly true of the other sexual offense statutes, and of the child abuse statute. When, as here, a multi-purpose criminal statute is involved, the court

must construct from the alternative elements within the statute the particular formulation that applies to the case at hand. It should rid the statute of alternative elements that do not apply. It must, in other words, treat a multi-purpose statute written in the alternative as it would treat separate statutes. The theory behind the

analysis is that a criminal statute written in the alternative creates a separate offense for each alternative and should therefore be treated for double jeopardy purposes as separate statutes would.

*Pandelli v. United States,* 635 F.2d 533, 537 (6th Cir.1980) [footnote omitted]. If, when we look at the applicable alternative elements, a lesser offense in effect becomes one of the elements of another offense, the *Blockburger* test is met. It is met because, by virtue of that fact, all the elements of the lesser offense must be established to prove the other; only the other offense has any additional elements.

So as far as child abuse is concerned, we can put aside any thought that these cases involve any aspect of child abuse based on physical harm or cruel physical treatment. At both Nightingale's and Myers's trials, the State's theory, as presented in opening statement, closing argument, and the court's instructions, was sexual child abuse.

At both trials, the judge instructed on the elements of all offenses submitted to the jury. The Nightingale instructions, unlike those in Myers's case, included a direction to consider each charged offense separately. The Nightingale jury also was told that sexual child abuse "means any act or acts involving sexual molestation or exploitation, including, but not limited to ... sexual offense in any degree...." The prosecutor repeated that language during closing argument and later during his remarks pointed out that some of the fondling testified to by the daughter "would be sexual contact which would fall under the definition of sexual abuse." Moreover, the Nightingale jury sent a question to the judge, asking whether "touching, in the wrong places, alone, constitute[s] child abuse as described in our instructions?" The judge's answer to that question was, in effect, "yes."

The instructions to the Myers jury also noted that sexual child abuse included a "sexual offense in any degree." And the Myers prosecutor argued to the jury that

[C]hild abuse, in this instance, consists of sexual abuse. You will have to decide today whether or not the State has proven that there was sexual abuse committed by Mr. Myers on his own daughter....

The evidence of that abuse, as recounted by the prosecutor, consisted of the evidence of the various sexual offenses with which Myers was charged. And in his final remarks, the prosecutor addressed by name only the crime of child abuse.

Under these circumstances, we believe that each jury could have found the defendant before it guilty of child abuse based solely on evidence of a sexual offense in some degree. If that were done, then the sexual offense became, in effect, a lesser included offense of sexual child abuse, and under the authorities we have cited, the offenses are the same for double jeopardy purposes. Indeed, with respect to criminal information No. 7319 in Myers's case, the jury must have found a sexual offense as the basis of the child abuse verdict, because that information involved but a single incident of sexual contact. But as to the other charges against both defendants, they involved numbers of incidents over periods of time, some relatively minor, some not. With respect to them, a jury could have reached various decisions as to child abuse and sexual offenses, all of which were reflected in general verdicts of guilty.

The problem, then, is that we cannot tell whether these general verdicts of guilty were based on the use of sexual offenses as lesser included offenses (or elements) of child abuse, or whether the child abuse verdicts were based on other reasons (*e.g.*, some sort of sexual molestation which the juries thought did not rise to the level of a sexual offense in any degree). In these circumstances we resolve the ambiguity in favor of the defendants and set aside the judgments on the sexual offense counts. *See Frye*, 283 Md. at 723–725, 393 A.2d at 1379–1380 (unclear basis for verdict of first degree murder). *Also see, Leary v. United States*, 395 U.S. 6, 31–32, 89 S.Ct. 1532, 1545–1546, 23 L.Ed.2d 57, 79 (1969) ("It has long been settled that when a case is

submitted to the jury on alternative theories the unconstitutionality of any of the theories requires that the conviction be set aside"); and *Yates v. United States*, 354 U.S. 298, 312, 77 S.Ct. 1064, 1073, 1 L.Ed.2d 1356, 1371 (1957) ("the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected").

In *Jones v. State*, reported *sub nom. Frye v. State*, 283 Md. 709, 724–725, 393 A.2d 1372, 1380 (1978), under circumstances somewhat similar to those now before us, we gave the State the option of retrying Jones on all charges. We directed that this be done under procedures that would eliminate uncertainty as to the basis for the jury's verdict. But that approach is not available to us here. In *Jones* we emphasized that "[i]t was not in any manner the State's fault that ... instructions [that would have resulted in the elimination of uncertainty in the verdict] were not given." 283 Md. at 724, 393 A.2d at 1380. It was only under those circumstances that the State was permitted to elect to retry Jones on all charges. Those circumstances do not exist in the present cases. Despite the clear warning given by *Frye* and *Jones*, in neither of these cases did the State request appropriate instructions, or take any other action designed to assure that the basis for the jury's verdict was apparent and certain.

We cannot say the State was not at fault, and we cannot, therefore, permit the option of new trials. The judgments on the several sex offenses (Art. 27, § 464A(a)(3) in Nightingale's case and Art. 27, §§ 464A(a)(3), 464B(a)(3), and 464C(a)(1) in Myers's) must be vacated, and to the extent they failed to so direct, the judgments of the Court of Special Appeals must be reversed.[7]

---

7. In the Court of Special Appeals, both Nightingale and Myers raised issues in addition to the merger question. Since we granted certiorari only as to merger, we have not addressed and shall not disturb the judgments of the intermediate appellate court on the other matters.

JUDGMENTS OF THE COURT OF SPECIAL APPEALS REVERSED IN PART AND AFFIRMED IN PART. CASES REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR CARROLL COUNTY UNDER THE SIXTH COUNT OF CRIMINAL INFORMATION NO. 9792 (STATE V. NIGHTINGALE) AND TO VACATE THE JUDGMENTS OF THE CIRCUIT COURT FOR FREDERICK COUNTY UNDER COUNTS I, II, AND IV OF CRIMINAL INFORMATION NO. 7317 AND COUNTS II AND III OF CRIMINAL INFORMATION NO. 7319 (STATE V. MYERS). COSTS TO BE PAID ONE–HALF BY THE COUNTY COMMISSIONERS OF CARROLL COUNTY AND ONE–HALF BY THE COUNTY COMMISSIONERS OF FREDERICK COUNTY, EXCEPT THAT TRANSCRIPT PREPARATION COSTS IN NIGHTINGALE'S CASE SHALL BE BORNE BY CARROLL COUNTY, AND TRANSCRIPT COSTS IN MYERS'S CASE SHALL BE BORNE BY FREDERICK COUNTY.