*Jamel Clark v. State of Maryland*
No. 23, September Term 2020

**Criminal Law – Sentencing – Merger of Convictions – Required Evidence Test**. A conviction for the crime of possession of an assault weapon does not merge into a conviction for possession of a firearm by a convicted drug felon under the required evidence test, even though both convictions are based on possession of the same weapon. Maryland Code, Criminal Law Article, §§4-303, 5-622.

**Criminal Law – Sentencing – Merger of Convictions – Rule of Lenity.** The rule of lenity is used as a last resort when the ordinary tools of statutory construction do not enable the court to discern the legislative intent underlying the statutes under which the defendant was convicted. The rule does not apply to merge convictions for sentencing where the legislative history shows that the purposes behind the statutes differed.

**Criminal Law – Sentencing – Merger of Convictions – Rule of Lenity.** The rule of lenity does not apply to the question whether a conviction for the crime of possession of an assault weapon merges into a conviction for possession of a firearm by a convicted drug felon, even when both convictions are based on possession of the same weapon, because the two statutes, as demonstrated by their text, context, and legislative history were intended to serve distinct purposes. Maryland Code, Criminal Law Article, §§4-303, 5-622.

Circuit Court for Baltimore City
Case No. 118250011
Argument: January 7, 2021

IN THE COURT OF APPEALS
OF MARYLAND

No. 23

September Term, 2020

_____

JAMEL CLARK

V.

STATE OF MARYLAND

_____

Barbera, C.J.,
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

_____

Opinion by McDonald, J.

_____

Filed: May 27, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

It is common for a defendant in a criminal case to be charged with multiple offenses based on the same facts. If the defendant is found guilty of more than one of those charges, the sentencing court must decide whether to merge the convictions for purposes of sentencing. A merger limits the sentence that the defendant can receive to the maximum sentence for the conviction that survives the merger.

This appeal is about whether convictions for two statutory offenses must be merged for purposes of sentencing under either the "required evidence test" or the "rule of lenity." Although the impetus for merging convictions is rooted in the constitutional and common law prohibition against double jeopardy – the idea that a person should not be punished twice for the same crime – its application under the required evidence test and rule of lenity is an effort to discern legislative intent. Under the required evidence test, a court assesses the elements of the two crimes and discerns whether the legislature intended to allow or to prohibit consecutive sentences. The rule of lenity tells a court what to do when that effort comes up empty.

In March 2018, an assault pistol allegedly belonging to Petitioner Jamel Clark, who had previously been convicted of a drug crime, was seized from his girlfriend's home. After a jury trial in the Circuit Court for Baltimore City, he was convicted of two offenses defined by separate statutes: (1) illegal possession of an assault weapon and (2) possession of a firearm by a person disqualified from possessing a firearm as a result of a prior felony drug conviction. The Circuit Court imposed the maximum sentence on each charge, to be served consecutively.

The sufficiency of the evidence to support the jury's verdict is not at issue in this appeal. The sole issue concerns Mr. Clark's sentence. He argues that the required evidence test, the rule of lenity, or both, compel the merger of his convictions for purposes of sentencing, and thus the consecutive sentence on one of the charges must be eliminated. The Court of Special Appeals rejected those arguments. For the reasons discussed below, we do as well.

## I

## Background

### A.     *The Investigation and Search*

On February 28, 2018, Mr. Clark was arrested in Baltimore City on charges related to trafficking in illegal drugs. On March 6, 2018, while confined in pretrial detention, Mr. Clark called his girlfriend, Ashley McGregor, from a jail telephone on which inmate calls are monitored and recorded.[1] During the call, Mr. Clark asked Ms. McGregor if she had moved his "stuff." She told him that the "stuff" was still wrapped up as he had left it and that she had put it in a back closet on top of a Christmas tree box. Mr. Clark asked "But you can't see it?" and Ms. McGregor responded "No."

A police detective involved in the investigation of Mr. Clark listened to the recorded jail call the next day. According to the detective's testimony at the trial of this case, he has listened to hundreds of recorded jail calls. Based on that experience, the detective

---

[1] Inmates are advised at the beginning of a call on such a phone that the call will be recorded and monitored.

2

concluded that the "stuff" that Mr. Clark and Ms. McGregor were discussing was likely to be contraband. The detective applied for a warrant to search Ms. McGregor's house.

While carrying out the search authorized by the warrant, officers asked Ms. McGregor if there was "anything in the house that we need to know about." She replied that there was a weapon in the basement on top of a Christmas tree box, and directed the officers to it. The officers recovered a .45-caliber Encom semiautomatic assault pistol. Ms. McGregor told the officers that Mr. Clark had brought the gun to her house. The officers also recovered a box of ammunition for a .22 caliber firearm – apparently not for the semiautomatic pistol that they seized from the closet.[2]

## B. Indictment, Trial, and Sentencing

On September 7, 2018, Mr. Clark was indicted in the Circuit Court for Baltimore City on six charges related to possession of the firearm and ammunition. On March 29, 2019, at the outset of the trial, the State nolle prossed three of the counts. The case proceeded to trial on the remaining three counts – possession of a firearm by a person previously convicted of a felony involving a controlled dangerous substance in violation of Maryland Code, Criminal Law Article ("CR"), §5-622; possession of an assault weapon in violation of CR §4-303; and possession of ammunition in violation of Maryland Code, Public Safety Article ("PS"), §5-133.1.

---

[2] In the Circuit Court, Mr. Clark moved to suppress evidence seized pursuant to the warrant. The Circuit Court denied that motion. Mr. Clark has not appealed that ruling.

At trial, the State presented testimony of the police detective who had obtained, and helped execute, the search warrant, as well as the testimony of Ms. McGregor.[3]  The State also played excerpts of video from two officers' body cameras, which had recorded the officers' encounter with Ms. McGregor during execution of the warrant and the recovery of the gun.  The firearm and ammunition were introduced into evidence.

A stipulation between the prosecution and defense concerning Mr. Clark's disqualification from possessing a firearm was admitted in evidence as an exhibit and read to the jury.  It stated:

> The Defendant has been charged with the offense of possession of a firearm.  The parties hereby stipulate that the Defendant is prohibited from possession of a firearm because of a previous conviction that prohibits his possession of a firearm.  The parties also stipulate that the firearm in question is classified as an assault pistol.

The parties thus agreed that the gun in question was a "firearm" that also met the definition of "assault pistol."[4]

---

[3] At trial, Ms. McGregor stated that she had lied when the officers asked her about the source of the gun.  She testified that the gun actually belonged to another friend who, unlike Mr. Clark, was not in jail at the time of the search and might have posed a threat to her and her young daughter.

[4] Such stipulations are often used when a disqualified person is prosecuted for illegal possession of a firearm in order to avoid the possible prejudice that a defendant may incur if details of the basis for the disqualification – usually a prior conviction – are presented to the jury. *See Carter v. State*, 374 Md. 693, 715-23 (2003).

In this case, Mr. Clark was disqualified from possessing a firearm as a result of a 2005 felony conviction for distribution of a controlled dangerous substance in violation of CR §5-602.  According to the trial transcript, in reading the stipulation to the jury, the prosecutor referred to the disqualification as a "condition" rather than a "conviction" – which may be a typographical or transcription error.  In its jury instructions, the trial court

In closing argument, counsel focused on the question whether Mr. Clark had possessed the weapon. After deliberating, the jury convicted Mr. Clark of the two remaining charges relating to possession of the weapon, but acquitted him of the charge concerning possession of ammunition.

Mr. Clark was sentenced to the statutory maximums for both offenses to be served consecutively – five years for the violation of CR §5-622 and three years for the violation CR §4-303 – for a total of eight years imprisonment.

## C.    *Appeal*

Mr. Clark appealed. In the Court of Special Appeals, he argued that, for several reasons, the two convictions should merge for purposes of sentencing. The intermediate appellate court rejected those arguments and affirmed his sentence. *Clark v. State*, 246 Md. App. 123 (2020).

We granted Mr. Clark's petition for a writ of *certiorari* to consider whether the two convictions should be merged for sentencing under either the required evidence test or the rule of lenity.[5]

---

noted that the State and Mr. Clark had stipulated that he had a prior disqualifying conviction.

[5] Before the Court of Special Appeals, Mr. Clark also argued unsuccessfully that merger was required under the principle of fundamental fairness. *See* 246 Md. App. at 138-40. He has not repeated that argument before us.

**Discussion**

*A.     Standard of Review*

Merger of convictions based on the same set of facts under the required evidence test derives from the protection against double jeopardy afforded by the Fifth Amendment of the federal Constitution and by Maryland common law. *Brooks v. State*, 439 Md. 698, 737 (2014). In the case of the rule of lenity, merger is required to reach a fair result when the court cannot decipher legislative intent as to whether separate sentences are permitted. *See Oglesby v. State*, 441 Md. 673, 681 (2015). In both cases, whether the convictions are to be merged poses a question of law that we review without deference to either the sentencing court or the intermediate appellate court.

*B.     Whether the Convictions Merge Under the Required Evidence Test*

*The Required Evidence Test*

Under the required evidence test,[6] convictions of two charges based on the same facts merge for sentencing purposes when the two charges are effectively the same offense or when one of the charges is a lesser-included offense of the other – *i.e.*, the lesser offense consists of the same elements as the other, but the other offense also requires proof of an additional element. *See generally Nicolas v. State*, 426 Md. 385, 401–09 (2012). If each

---

[6] The required evidence test is also known as the *Blockburger* test, in reference to a seminal Supreme Court decision that applied that test to determine whether convictions of two offenses amounted to one offense for which only a single penalty could lawfully be imposed. *See Blockburger v. United States*, 284 U.S. 299 (1932).

offense contains an element that the other does not, then convictions of the two offenses do not merge under the required evidence test. *State v. Lancaster*, 332 Md. 385, 391–92 (1993).[7] And, even if it is concluded that the two offenses share the same elements under the required evidence test, the protection against double jeopardy, at least in the constitutional sense, does not require merger when the legislature intended to permit separate punishments for the two offenses. *See Missouri v. Hunter*, 459 U.S. 359 (1983).

There is no question that Mr. Clark's two convictions are based on the same underlying facts. Accordingly, whether the convictions merge for sentencing under the required evidence test depends on a comparison of the elements of the two offenses.

*Comparison of Elements of the Two Offenses*

Mr. Clark was convicted of possession of an assault weapon in violation of CR §4-303. That statute provides, in relevant part, that "a person may not … possess, sell, offer to sell, transfer, purchase, or receive an assault weapon." CR §4-303(a)(2). The definition of "assault weapon" includes an assault pistol and, as the parties stipulated, the semiautomatic pistol model seized from Ms. McGregor's home. CR §4-301(c)(5), (d)(2).

Mr. Clark's other conviction was for possession of a firearm after having been convicted of a drug felony, in violation of CR §5-622(b)(1). For purposes of that statute, "firearm" includes:

---

[7] Mr. Clark asserts that such legislative intent must be expressed in an explicit statutory anti-merger provision. However, as indicated later in the text of this opinion, neither the Supreme Court nor this Court has adopted such a rule.

(1)     a handgun, antique firearm, rifle, shotgun, short-barreled shotgun, and short-barreled rifle, as those words are defined in §4-201 of [the Criminal Law] article;

(2)     a machine gun, as defined in §4-401 of [the Criminal Law] article; and

(3)     a regulated firearm, as defined in §5-101 of the Public Safety article.

CR §5-622(a). This definition encompasses assault weapons, as well as many other types of firearms. *See* PS §5-101(r) (definition of "regulated firearm" includes various assault weapons).

Each of these two offenses includes an element that the other does not. On the one hand, to prove a violation of CR §5-622(b)(1), the State must establish that the defendant was previously convicted of a drug felony, while CR §4-303(a)(2) does not require proof of a prior conviction. On the other hand, to prove a violation of CR §4-303(a)(2), the State must establish that the defendant possessed an assault weapon, while a violation of CR §5-622 does not require proof that the particular firearm possessed by the defendant was an assault weapon. As the Court of Special Appeals succinctly noted, "while all assault weapons may be firearms, not all firearms are assault weapons." 246 Md. App. at 134. Thus, merger would not be required under a straightforward application of the required evidence test.

Nevertheless, Mr. Clark argues that, in the particular circumstances of this case, his violation of CR §4-303(a)(2) was a lesser-included offense of his violation of CR §5-622(b) because the same weapon satisfied both the "assault weapon" element of the former crime and the "firearm" element of the latter crime. That argument is based on the premise that

8

CR §5-622 is a "multi-purpose criminal statute."  In addition, he argues that the convictions merge because neither statute contains an express anti-merger provision.

*Multi-Purpose Criminal Statutes*

Mr. Clark relies on a prior decision of this Court that held that, in the circumstances of that case, a conviction of child abuse and a conviction of a sex offense should have been merged for purposes of sentencing.  *Nightingale v. State*, 312 Md. 699 (1988).  The *Nightingale* decision was based on the understanding that the child abuse statute was a "multi-purpose criminal statute."  312 Md. at 705.  Such a statute sets forth different modalities for committing the particular offense, which means that proof of the offense may involve different elements, depending on the particular modality.  Therefore, when a court applies the required evidence test in a case involving a multi-purpose criminal statute, the court must consider the elements of the offense relevant to the particular case.  *E.g., Nicolas*, 426 Md. at 403 (applying required evidence test in context of specific alternative modality of second-degree assault); *Abeokuto v. State*, 391 Md. 289, 353-55 (2006) (applying required evidence test in context of specific alternative elements of kidnapping and child kidnapping statutes).

For example, in *Nightingale,* the child abuse statute set forth two alternative ways for satisfying the "abuse" element of the offense – (1) physical injury as a result of cruel or inhumane treatment or (2) sexual abuse, regardless of any physical injury.  312 Md. at

9

703 & n.3. At the trials at issue in that appeal,[8] the prosecution relied solely on the sexual abuse modality of the child abuse offense. Under those circumstances, this Court held that the defendants' convictions of certain sexual offenses were effectively lesser-included offenses of their child abuse convictions and had to be merged for sentencing purposes under the required evidence test. *Id*. at 708.[9]

The holding in *Nightingale* does not apply here because CR §5-622 is not a multi-purpose criminal statute. In contrast to the statute in *Nightingale*, CR §5-622 does not set out different modalities — each with its own set of sub-elements — for committing the same offense. The list of firearms in CR §5-622(a) and the other definitions incorporated by reference is not an outline of different modalities, but simply an elaboration in tabular form of the definition of "firearm." The definition of "firearm" in CR §5-622(a) encompasses more than 50 types or models of firearms that the term "includes." Moreover, the General Assembly's use of the word "includes" – as opposed to the word "means" – establishes that the list of types or models is not an exhaustive list of weapons that can satisfy the statute. The General Assembly uses the verb "includes" in a definition to show "by way of illustration and not by way of limitation." Maryland Code, General Provisions

---

[8] The *Nightingale* decision concerned appeals of two separate cases that raised the same question concerning application of the required evidence test and that were consolidated for purposes of appeal. 312 Md. at 700-02.

[9] In reaction to the *Nightingale* decision, the General Assembly amended the child abuse statute to include an anti-merger provision and ultimately separated the sexual abuse modality into an entirely separate crime. Chapter 604, Laws of Maryland 1990; Chapter 273, Laws of Maryland 2002. The two separate offenses are now set forth in CR §§3-601, 3-602.

10

Article, §1-110; *see also United Bank v. Buckingham*, 472 Md. 407, 424-25 (2021) (contrasting the use of the verbs "means" and "includes" in statutes); Department of Legislative Services, Maryland Style Manual for Statutory Law (2008) at 29 ("[u]se 'includes' if the definition is intended to be partial or illustrative").

Under Mr. Clark's conception of CR §5-622 as a multi-purpose criminal statute, each of the 50 examples of firearms set forth in CR §5-622 would represent a different modality of that offense for purposes of the required evidence test. Indeed, the firearm at issue in this case, which is not specifically mentioned by name in the statute, would establish at least a 51st modality. Under that theory, many, if not most, criminal statutes that define a term through illustrations would have limitless modalities, and convictions under those statutes would always merge with convictions for other offenses based on the same set of facts in the absence of an anti-merger provision in the statute. In any event, the statutory text does not support Mr. Clark's argument that the definition of "firearm" in CR §5-622 creates different modalities. The fact that an assault weapon is one among many types of weapons that can satisfy the "firearm" element of CR §5-622 does not mean that CR §5-622 is a multi-purpose criminal statute. The rationale of *Nightingale* does not apply.

*Absence of Anti-Merger Provision*

Mr. Clark also argues that we should find legislative intent to allow consecutive sentences for two offenses based on the same facts only when one or both statutes contain an explicit anti-merger provision, as some statutes do. In particular, he points to anti-merger provisions that appear in other offenses involving guns and drugs – CR §5-

11

621(c)(3)(iii) (use or possession of firearm during drug trafficking crime) and CR §5-624(d) (administering controlled dangerous substance in connection with crime of violence or sexual offense) – or involving the use of assault weapons – CR §4-306(b)(3)(iii) (use of assault weapon in commission of felony or crime of violence). However, unlike the statutes at issue in this case, each of the statutory offenses cited by Mr. Clark requires the commission of a predicate crime, and the question of merger would always arise upon conviction of both. Given those circumstances, it is hardly surprising that the General Assembly gave specific direction to allow or to require consecutive sentences. Neither the Supreme Court nor this Court has required an explicit statutory provision barring merger of convictions for a court to impose consecutive sentences for convictions based on the same facts. *See Pye v. State*, 397 Md. 626, 630-37 (2007) (rejecting argument that two firearms-related convictions must merge for sentencing in the absence of a statutory anti-merger provision); *see also Holbrook v. State*, 364 Md. 354, 373-75 (2001) (holding that conviction of reckless endangerment did not merge with conviction of arson, citing "clear legislative intent," not an anti-merger clause).

*Summary*

Although Mr. Clark's two convictions were based on the same facts, proof of each offense involves an element that proof of the other does not, and so those convictions do not merge under the required evidence test. CR §5-622 is not a "multi-purpose criminal statute" that includes alternative modalities with different elements. Accordingly, the elements of that offense – for purposes of the required evidence test – do not vary according to the particular weapon that satisfies the "firearm" element of the offense. Further, the

12

absence of an anti-merger provision in one or both statutes does not preclude a court from imposing consecutive sentences.

## C.     *Whether the Convictions Merge Under the Rule of Lenity*

*The Rule of Lenity*

Mr. Clark also argues that his two convictions should be merged under the rule of lenity.  Under the rule of lenity, convictions are merged for sentencing when there is an unresolvable ambiguity as to whether the General Assembly intended to allow or to prohibit sentences for multiple offenses based on the same acts.  *Jones v. State*, 357 Md. 141, 163-68 (1999).  The rule of lenity is a tiebreaker that favors a defendant when a court using the tools of statutory construction despairs of determining legislative intent of ambiguous statutory provisions.  *Oglesby*, 441 Md. at 681.  The rule of lenity "only informs our interpretation of a criminal statute when the standard tools of statutory interpretation fail to discern the intent of the Legislature."  *Gardner v. State*, 420 Md. 1, 17 (2011).

*Legislative Intent – Text & Context*

There is no need to resort to the rule of lenity in this case.  The statutory text of CR §§4-303 and 5-622, viewed in context, make it unnecessary.  CR §5-622 is codified as part of the criminal drug laws and prohibits a convicted drug felon from possessing a firearm of any kind.  CR §4-303 is codified as part of the criminal laws regulating weapons and prohibits anyone from possessing a specific type of firearm – an assault weapon.  On their face, the two statutes appear to target distinct concerns and thus to allow for separate sentences for convictions of these offenses.  The legislative history confirms this view.

13

*Legislative Intent – Legislative History*

> a. Possession of Firearm by Convicted Drug Felon (CR §5-622)

This Court examined the legislative history of CR §5-622 in detail in *Oglesby*, 441 Md. at 688-97. There is no need to repeat that history in its entirety here. While gun regulation can often be controversial, prohibiting certain categories of persons from possessing dangerous weapons is seemingly broadly supported and, as recounted in *Oglesby*, Maryland law has done so since at least 1941. 441 Md. at 689 (noting 1941 enactment of law prohibiting possession of pistol or revolver by fugitives or persons convicted of a "crime of violence").

Over the years, the Legislature expanded the range of offenses that would disqualify a convicted defendant from possessing a firearm and added other types of disqualifications to this provision, which was originally codified in a firearms subtitle of Article 27 of the Maryland Code, the article of the code that then contained most criminal statutes. 441 Md. at 689-90 & n.14. Pertinent to this case, in 1989, the Legislature added certain drug-related crimes as another category of disqualifying convictions. *Id.* at 690. Testimony before the Legislature "indicated that the inclusion of convicted drug sellers and dealers in the list of persons specifically prohibited from purchasing and possessing handguns is necessary and overdue, especially since drug wars involving guns have grown more commonplace." *Id.* (citing House Floor Report to House Bill 654 (1989) at p. 2). That amendment made it a misdemeanor for a person previously convicted of certain drug-related crimes to possess a pistol or revolver, with a maximum penalty of three years imprisonment and a $5,000 fine. *Id.*

In 1991, in the course of amending the laws relating to controlled dangerous substances, the General Assembly enacted the predecessor to CR §5-622, a "similar but broader prohibition on the possession of a firearm by convicted drug felons with a potentially tougher penalty." 441 Md. at 691. The new provision prohibited a person with any prior felony drug conviction not only from possessing, but also from owning, carrying or transporting a firearm. *Id.* "Firearm" was defined more broadly to include not only pistols and revolvers, but also other handguns, rifles, shotguns, assault weapons, and machine guns. *Id.* A violation of this prohibition was designated a felony punishable by imprisonment of up to five years and a $10,000 fine. *Id.*

At the same time, the General Assembly repealed the existing narrower crime in the firearms subtitle, with the express intent that only the more expansive criminal provision in the controlled dangerous substances subtitle that carried the potentially greater penalty would remain. 441 Md. at 691 (citing Judicial Proceedings Committee, Explanation of Floor Amendment to House Bill 978 (1991)).[10] Thus, as of the effective date of the 1991 law, under the subtitle of the criminal statutes concerning controlled dangerous substances, the possession of a firearm by a person with any prior conviction of a felony drug offense (or of conspiracy or attempt to commit such an offense) was a felony punishable by up to a maximum of five years and a $10,000 fine. *Id.* at 692. In 2002, the statute was re-codified in the controlled dangerous substances title of the new Criminal Law Article as CR §5-622.

---

[10] The provision in the firearms subtitle continued to prohibit the sale or transfer of a pistol or revolver by a person who had been convicted of certain drug offenses. 441 Md. at 691-92.

Chapter 26, §2, Laws of Maryland 2002.  It has not been substantively amended since then.[11]

> b.  Possession of an Assault Weapon (CR §4-303)

The predecessor of CR §4-303, which prohibited anyone from possessing an "assault pistol," was enacted in 1994.  Chapter 456, Laws of Maryland 1994, *codified in pertinent part at* Maryland Code, former Article 27, §36H-3.  Violation of the law was a misdemeanor that carried the penalty of a fine up to $5,000 and a maximum sentence of three years.

The Floor Report for the 1994 bill noted that the number and types of assault pistols had proliferated in recent years and that such weapons were becoming more readily available for use in criminal activity.  The Floor Report described the weapons targeted by the bill as follows:

> The purpose of this bill is to ban assault pistols in the State that have no legitimate legal purpose such as competition shooting or hunting. The assault pistols prohibited by Senate Bill 619 are designed to maximize lethal effects through a rapid rate of fire. They are designed to be spray-fired from the hip and to enable the shooter to maintain control of the firearm while firing many rounds in rapid succession. Assault pistols are designed for military purposes and, accordingly, are equipped with various kinds of combat hardware.

Floor Report for Senate Bill 619 (1994) at pp. 2-3.

---

[11] A 2003 amendment updated cross-references in the statute to other statutory provisions that had been re-codified in the then-new Public Safety Article.  Chapter 17, Laws of Maryland 2003.  Non-substantive changes in terminology were made in annual corrective bills.  Chapter 43, Laws of Maryland 2013; Chapter 8, Laws of Maryland 2019.

Similar concerns led to the passage of assault weapons bans by Congress and various state legislatures during the mid-1990s. *See* Thomas E. Romano, *Firing Back: Legislative Attempts to Combat Assault Weapons*, 19 Seton Hall Legis. J. 857 (1995) (describing legislation passed by Congress and several state legislatures in addition to Maryland). The inspiration for such laws appeared to be mass shootings and "random acts of violence" committed with such weapons. *Id*.

In 2002, as part of code revision, the Maryland statute proscribing possession of an assault pistol was re-codified under the "Weapons Crimes" title of the new Criminal Law Article as CR §4-303. Chapter 26, Laws of Maryland 2002.[12]

Following the notorious mass shooting of young children at Sandy Hook Elementary School in 2012, the General Assembly expanded the ban in CR §4-303 from "assault pistols" to encompass all "assault weapons" in the Firearm Safety Act of 2013. Chapter 427, Laws of Maryland 2013.[13] Testifying in support of the administration bill that contained the amendment, the Governor described it as an effort to prevent future mass shootings and to withdraw military-style weapons from the streets. Testimony of Governor Martin O'Malley on Senate Bill 281 before Senate Judicial Proceedings Committee

---

[12] A 2010 amendment of the provision created an exception for a person transporting an assault pistol in order to comply with a court order requiring surrender of the weapon. Chapter 712, Laws of Maryland 2010.

[13] In 2018, the statute was amended in a minor respect not pertinent to this case. Chapter 251, Laws of Maryland 2018.

(February 6, 2013) at p. 2.[14] While keeping such weapons out of the hands of those engaged in criminal activity was certainly a concern, the focus was on the destructive capacity of assault weapons even in the hands of someone without a criminal record – for example, an individual with a mental illness that might make the person prone to destructive behavior. *Id.* at pp. 2-3. Indeed, much of the fiscal note for the 2013 legislation that amended CR §4-303 consisted of a 10-page appendix surveying laws nationwide that restrict possession of firearms by mentally ill individuals. *See* Revised Fiscal and Policy Note for Senate Bill 281 (2013), Appendix.

### c. Analysis

In arguing that his convictions for these two crimes should merge, Mr. Clark asserts that both statutes address a "concern for gun violence" and "criminalize the possession of firearms." These two statements are certainly true, but they fail to capture the specific problems that the General Assembly was addressing in those two gun laws. The legislative

---

[14] Other proponents of the bill expressed similar sentiments. *E.g.,* Baltimore Sun, *Editorial: What Maryland Can Do to Reduce Gun Violence* (December 20, 2012); Letter of Maryland Higher Education Commission to Senate Judicial Proceedings Committee and House Judiciary Committee (February 4, 2013); Letter of Ecumenical Leaders' Group to Senate Judicial Proceedings Committee (February 5, 2013); Letter of American Academy of Pediatrics to Senate Judicial Proceedings Committee (February 6, 2013).

Opponents of the legislation expressed a broad view of the Second Amendment to the United States Constitution, asserted that most gun owners do not engage in criminal activity, and discounted the effectiveness of the legislation to quell mass shootings. *E.g.*, Testimony of National Rifle Association Institute for Legislative Action concerning Senate Bill 281 (2013); Letter of National Shooting Sports Foundation to Senate Judicial Proceedings Committee (February 6, 2013); Testimony of Beretta USA, Inc. concerning Senate Bill 281 (2013).

history of the two statutes makes clear that the two statutes had different origins and different purposes, although on occasion the same conduct may violate both. Both statutes address gun violence and gun possession, but for different reasons. CR §5-622 is intended to prevent certain categories of persons (including those convicted of drug-related felonies) from using or possessing any firearm – presumably in an effort to reduce drug-related violence. *See* CR §5-102 (purpose of controlled substances title). In contrast, CR §4-303 is intended to ban a certain category of firearm (assault weapons) that is particularly lethal and results in mass casualties whoever may be wielding the weapon. The fact that Mr. Clark's possession of one weapon satisfies the elements of both statutes does not negate the distinct, though related, legislative purposes underlying those statutes.

Moreover, Mr. Clark's argument assumes that the assault weapon ban adds nothing to the earlier provision in the controlled dangerous substances title regarding the possession of a firearm by a person convicted of a drug-related felony. However, when it enacts a law, the General Assembly is presumed to be aware of existing related statutes. Accordingly, a statute should not be construed to render any part of it superfluous. *See GEICO v. Insurance Commissioner*, 332 Md. 124, 132 (1993). When the Legislature enacted the assault pistols ban in 1994, and later expanded that law to encompass other assault weapons, it was presumed to be aware of the existing law prohibiting a convicted drug felon from possessing any firearm. *See Frazier v. State*, 318 Md. 597 (1990) (concluding, after review of legislative history, that legislature did not intend to prohibit separate penalties for crimes of (1) carrying a handgun and (2) possession of a revolver by one previously convicted of a crime of violence); *Pye,* 397 Md. at 630-37 (same); *cf.*

19

*Oglesby*, 441 Md. at 688-99 (in light of legislative histories of overlapping firearms statutes, rule of lenity did not limit sentence to that of more lenient offense).

*Summary*

The rule of lenity is a rare tool of last resort and is not a means for determining or defeating legislative intent. *Oglesby*, 441 Md. at 681. Where legislative intent is manifest, the rule of lenity does not apply. As discussed above, the ordinary tools of statutory construction suffice to discern the legislative intent underlying CR §5-622 and CR §4-303. Accordingly, the rule of lenity does not require merger of Mr. Clark's convictions for purposes of sentencing.

## III

## Conclusion

For the reasons set forth above, we hold that Mr. Clark's conviction under CR §4-303 for possession of an assault weapon does not merge, for purposes of sentencing, into his conviction under CR §5-622 for possession of a firearm by a convicted drug felon. Accordingly, it was within the discretion of the Circuit Court to impose consecutive sentences for the two convictions.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**