Secretary, Department of Public Safety and Correctional Services v. Dallas Fenton, No. 46, September Term, 2024

**DIMINUTION OF CONFINEMENT CREDITS – MD. CODE ANN., CORR. SERVS. (1999, 2017 REPL. VOL., 2024 SUPP.) § 3-702(c) – "PREVIOUSLY CONVICTED"** – Supreme Court of Maryland held that, under Md. Code Ann., Corr. Servs. (1999, 2017 Repl. Vol., 2024 Supp.) ("CS") § 3-702(c), receipt of diminution credits is precluded where incarcerated individual is serving sentence for violation of Md. Code Ann., Crim. Law (2002, 2021 Repl. Vol.) ("CR") § 3-307 involving victim who is child under age of 16 only if offense that is basis of sentence incarcerated individual is serving was committed after individual had been previously convicted of violation of CR § 3-307 involving victim who is child under age of 16.

Supreme Court concluded that language of CS § 3-702(c) requiring that incarcerated individual have been "previously convicted" of same offense, CR § 3-307, is ambiguous as statute contains no definition of phrase or description of event that conviction must precede. Supreme Court concluded that legislative history of CS § 3-702(c) reveals that General Assembly intended statute to serve purpose of deterrence of repeat offenders.

Applying traditional principles of statutory construction, Supreme Court held that diminution credits may be withheld under CS § 3-702(c) only where previous conviction precedes commission of offense for which incarcerated individual is serving sentence. Supreme Court held that Respondent will not have been "previously convicted" of third-degree sexual offense involving victim who is child under age of 16 at time that he is serving sentence at issue and is therefore entitled to diminution of confinement credits.

Circuit Court for Washington County
Case No. C-21-CV-21-000372

Argued: May 6, 2025

IN THE SUPREME COURT

OF MARYLAND

No. 46

September Term, 2024

_____

SECRETARY, DEPARTMENT OF PUBLIC
SAFETY AND CORRECTIONAL SERVICES

v.

DALLAS FENTON

_____

Fader, C.J.
Watts
Booth
Biran
Gould
Eaves
Killough,

JJ.

_____

Opinion by Watts, J.
Biran, J., concurs.

_____

Filed: July 11, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

Under Md. Code Ann., Corr. Servs. (1999, 2017 Repl. Vol., 2024 Supp.) ("CS") § 3-702(c), an incarcerated individual who is serving a sentence for commission of a third-degree sexual offense in violation of Md. Code Ann., Crim. Law (2002, 2021 Repl. Vol.) ("CR") § 3-307 involving a victim who is a child under the age of 16 years is not entitled to diminution of confinement credits "if the incarcerated individual was previously convicted" of a violation of CR § 3-307 involving a victim who is a child under the age of 16 years.[1]  In this case, we must determine whether this prohibition applies only where the previous conviction occurred before commission of the offense for which the incarcerated individual is serving the sentence at issue.

This case arises from Dallas Fenton's, Respondent's, commission of several sexual offenses against a fourteen-year-old child.  In the Circuit Court for Wicomico County, a jury convicted Mr. Fenton of eight counts of third-degree sexual offense in violation of CR § 3-307 (Counts 1 through 8).  Mr. Fenton was also convicted of one count of sexual solicitation of a minor (Count 9) and one count of indecent exposure (Count 11).  As to one of the third-degree sexual offenses (Count 1), the circuit court imposed a sentence of ten years' imprisonment, to begin on December 29, 2016.  As to another of the third-degree sexual offenses (Count 8), which occurred on a different date than the offense in Count 1, the circuit court imposed a sentence of ten years' imprisonment, consecutive to the sentence imposed for Count 1.  While Mr. Fenton was serving the first of the two ten-year sentences,

---

[1]At the time that Mr. Fenton was sentenced, the version of CS § 3-702(c) in effect referred to an incarcerated individual as an "inmate."  Md. Code Ann., Corr. Servs. (1999, 2008 Repl. Vol., 2016 Supp.) § 3-702(c).  Depending on the context, we will use both terms.

the Division of Correction ("DOC") of the Department of Public Safety and Correctional Services ("DPSCS") notified him that he was not to receive any diminution of confinement credits[2] for the ten-year sentence imposed for Count 8 because CS § 3-702(c) prohibits a person who was "previously convicted" of a third-degree sexual offense involving a victim who is a child under the age of 16 from receiving diminution credits where the person has already been previously convicted of the same offense.

After an unsuccessful request for a Warden's administrative remedy, Mr. Fenton filed a grievance with the Inmate Grievance Office ("IGO"),[3] alleging that CS § 3-702(c)'s prohibition on diminution credits for an inmate who was previously convicted of third-degree sexual offense did not apply to him. The IGO dismissed the grievance, determining that, pursuant to CS § 3-702(c), Mr. Fenton was not entitled to diminution credits for the sentence on Count 8 because he had previously been convicted of Count 1 for the same offense. Mr. Fenton filed a petition for judicial review in the circuit court, which was granted in part and denied in part. The circuit court ruled that CS § 3-702(c) applies because, on the date that Mr. Fenton will begin serving his sentence on Count 8, he will have been "previously convicted" of a violation of CR § 3-307 involving a victim under the age of 16 in Count 1. The circuit court ruled that the prohibition under CS § 3-702(c)

---

[2]Generally, diminution of confinement credits are reductions in a prison sentence that reduce the time an incarcerated individual is required to serve on a term of confinement. See CS § 3-702(a).

[3]Effective October 1, 2023, the Inmate Grievance Office was renamed the "Incarcerated Individual Grievance Office." See 2023 Md. Laws (S.B. 293, Ch. 721, § 3), available at https://mgaleg.maryland.gov/2023RS/chapters_noln/Ch_721_sb0293T.pdf [https://perma.cc/JZY2-FTLB]. We refer to the agency by its name at the time it considered and decided Mr. Fenton's grievance—"IGO."

does not apply, however, to good conduct credits awarded under CS § 3-704 for the sentence in Count 8 but applies to the award of other diminution of confinement credits.

Mr. Fenton and the Secretary of DPSCS, Petitioner ("the Secretary"), each filed applications for leave to appeal, which the Appellate Court of Maryland granted. The Appellate Court held that Mr. Fenton was not prohibited from accruing diminution of confinement credits under CS § 3-702(c) and vacated the judgment of the circuit court and remanded the case to that court, directing it to remand the case to the Secretary with instructions to calculate Mr. Fenton's diminution of confinement credits in accordance with its opinion. See Fenton v. Sec'y, Dep't of Pub. Safety and Corr. Servs., 263 Md. App. 613, 630, 326 A.3d 1, 11 (2024). Applying the statutory construction framework set forth in Gargliano v. State, 334 Md. 428, 639 A.2d 675 (1994), the Appellate Court concluded that CS § 3-702(c) is applicable only where an inmate has been convicted of a violation of CR § 3-307 prior to the commission of the offense for which the inmate is serving the sentence at issue. See Fenton, 263 Md. App. at 629-30, 326 A.2d at 10-11.

The Secretary filed a petition for a writ of *certiorari*, which this Court granted. See Sec'y, Dep't of Pub. Safety and Corr. Servs. v. Fenton, 489 Md. 330, 330 A.3d 658 (2025). The Secretary contends that CS § 3-702(c) bars Mr. Fenton from earning diminution of confinement credits while serving the sentence for Count 8 because, according to the Secretary, the Appellate Court erred in relying on Gargliano, as that case involved interpretation of a criminal sentencing statute, Art. 27, § 286(c), which required an enhanced penalty, whereas CS § 3-702 is not a sentencing statute. In the Secretary's view, the statutes have different language and purposes, and the differences preclude interpreting

the previous conviction requirement in the statutes to have the same meaning.

We hold that, under CS § 3-702(c), the receipt of diminution of confinement credits is precluded where an incarcerated individual is serving a sentence for a violation of CR § 3-307 involving a victim who is a child under the age of 16 only if the offense that is the basis of the sentence was committed after the incarcerated individual had been previously convicted of a violation of CR § 3-307 involving a victim who is a child under the age of 16. We conclude that the language of CS § 3-702(c) requiring that an incarcerated individual have been "previously convicted" is ambiguous in that the statute contains no definition of the phrase "previously convicted" or description of an event that the conviction must be precede, leaving the phrase capable of more than one interpretation.

The legislative history of CS § 3-702(c) resolves the ambiguity, however, and leads to our conclusion that diminution of confinement credits may be withheld only where the offense for which an incarcerated individual is serving a sentence is committed after the inmate has been convicted of an earlier violation of CR § 3-307 involving a victim under the age of 16. The legislative history of CS § 3-702(c) reveals that the General Assembly intended the statute to serve the purpose of deterrence of repeat offenders. To the extent that there is arguably any unresolved ambiguity with respect to the interpretation of CS § 3-702(c) after examining the plain language and legislative history of the statute (which there is not), the rule of lenity would apply.

For the reasons discussed below, we affirm the judgment of the Appellate Court, vacating the circuit court's judgment and remanding the case to the circuit court with instructions to remand the case to the Secretary to calculate Mr. Fenton's diminution of

confinement credits in a manner consistent with Mr. Fenton not being prohibited by CS §

3-702(c) from receiving diminution of confinement credits as to the sentence on Count 8.

## BACKGROUND

### Trial and Sentencing

On June 27, 2017, a jury found Mr. Fenton guilty of eight counts of third-degree

sexual offense (Counts 1 through 8), one count of sexual solicitation of a minor (Count 9),

and one count of indecent exposure (Count 11). In its opinion, the Appellate Court

described the conduct underlying Mr. Fenton's convictions of CR § 3-307, *i.e.*, the third-

degree sexual offenses, by setting forth the summary of facts from the unreported opinion

in which it affirmed Mr. Fenton's convictions, Fenton v. State, No. 1111, Sept. Term, 2017,

2018 WL 2446973 (Md. Ct. Spec. App. May 30, 2018). See Fenton, 263 Md. App. at 615-

17, 326 A.3d at 2-3. We do the same.

> The female victim lived with her mother and two siblings in Salisbury. She celebrated her fourteenth birthday on March 31, 2016. Shortly thereafter she began communicating with [Mr. Fenton]—then fifty-seven years of age—on "Whisper," a smartphone application which allows users to communicate anonymously by exchanging text messages and/or digital images. During their private dialogues on Whisper, [Mr. Fenton] and the victim exchanged personal information. She informed [Mr. Fenton] that she was fourteen years old, while appellant identified himself as a forty-seven-year-old husband and father of two. Eventually their communications became sexual in nature. At [Mr. Fenton's] request, they exchanged nude photographs of themselves.

> [Mr. Fenton] requested that they forego further use of Whisper in favor of video-chatting on Skype. They communicated via video-chat on at least two occasions prior to their first meeting in person. On both such occasions, [Mr. Fenton] asked her "to show me touching myself … [i]n my vagina." As the victim did so, she could observe [Mr. Fenton] masturbating. [Mr. Fenton] and the victim communicated on Whisper and/or Skype for "maybe a few weeks" prior to their first in-person encounter "[s]ometime in April" 2016.

- 5 -

On Friday and Sunday evenings of alternating weekends the victim was alone in her home for two to three hours, beginning around 5:30 or 6:00 p.m. while her mother made roundtrips to Easton, delivering and picking up the elder sibling to and from child visitation. [Mr. Fenton's] first three in-person encounters with the victim took place in her home while her mother made one of these trips.

Their first such encounter took place on either a Friday or a Sunday evening. [Mr. Fenton] asked her to remove her jeans. After she did so, [Mr. Fenton] performed cunnilingus on the victim, touched her breasts, and digitally penetrated her vagina. The second such meeting likewise took place on a Friday or a Sunday evening. [Mr. Fenton] performed cunnilingus on her and touched her "the same as the first time." This encounter differed from the first, however, in that [Mr. Fenton] engaged in fellatio with the victim. During the third encounter [Mr. Fenton] again engaged in fellatio and cunnilingus with her.

The final in-person encounter occurred on Friday, May 20, 2016, the day on which the victim attended her class's eighth grade graduation prom. Shortly after 5:00 p.m., [Mr. Fenton], driving a pickup truck, picked up the victim from outside her house and drove to "one of the back roads down by [her] school." At trial the State asked the victim to describe the location at which [Mr. Fenton] ultimately parked. She testified that "[i]t was a little bit off the road. In the woods." The State then asked, "Was there a dirt lane there or anything, or were you just in the grass?" The victim answered, "It was, like, gravel." After [Mr. Fenton] parked they alighted the vehicle. [Mr. Fenton] engaged in sexual intercourse with the victim while she sat on the tailgate of the truck. Thereafter, he dropped her off at her school.

Fenton, 2018 WL 2446973, at *1-2 (ellipsis and some alterations in original).

On August 9, 2017, the circuit court sentenced Mr. Fenton to ten years of incarceration on Count 1, to begin on December 29, 2016. On Count 8, the circuit court sentenced Mr. Fenton to ten years of incarceration, to be served consecutively to the sentence for Count 1. On Count 11, the circuit court sentenced Mr. Fenton to three years of incarceration, to be served consecutively to the sentence for Count 8. On Counts 3, 5 and 9, the circuit court sentenced Mr. Fenton to five years of incarceration as to each count,

- 6 -

consecutive to other counts, with all of the 15 years suspended.[4]

On August 9, 2017, Mr. Fenton filed a notice of appeal, raising several issues which are unrelated to the instant matter.[5] The Appellate Court affirmed Mr. Fenton's convictions. See Fenton, 2018 WL 2446973, at *7.[6]

**Diminution of Confinement Credits**

Diminution of confinement credits reduce the time that an inmate serves on a term

---

[4]The circuit court sentenced Mr. Fenton to a total of 38 years of imprisonment, with 15 years suspended. The ten-year sentences imposed for the third-degree sexual offenses charged in Counts 1 and 8 are the sentences of concern in this case. For the other offenses, the circuit court imposed a sentence of three years' incarceration for Count 11, consecutive to the sentence imposed on Count 8, and a sentence of five years' incarceration each for Counts 3, 5, and 9 as follows: Count 3 (5 years consecutive to Count 11), Count 5 (5 years consecutive to Count 3), and Count 9 (5 years consecutive to Count 5), with service of the sentences suspended. The circuit court determined that Count 2 merged with Count 1, Count 4 merged with Count 3, and Counts 6 and 7 merged with Count 5. Thus, the circuit court did not impose separate sentences for Counts 2, 4, 6, and 7.

[5]The questions raised in Mr. Fenton's appeal were as follows:

> (1) Did the State fail to prove eight separate counts of third degree sexual offense?
>
> (2) Did the State fail to present sufficient evidence to sustain the conviction for indecent exposure?
>
> (3) Did the lower court fail to fully credit Mr. Fenton for time served?

Fenton, 2018 WL 2446973, at *1.

[6]The Appellate Court determined, however, that the circuit court only credited Mr. Fenton with 182 days for time served and failed to credit him with an additional 41 days for time served, despite the commitment record reflecting that Mr. Fenton had been continuously confined for 223 days following his arrest. See Fenton, 2018 WL 2446973, at *7. As such, the Appellate Court vacated Mr. Fenton's sentence and remanded the case to the circuit court for revision of the sentence consistent with its opinion. See id. As a result, on January 22, 2019, the circuit court resentenced Mr. Fenton and issued an amended commitment record, which reflected credit for 223 days for time served.

- 7 -

of commitment but do not modify or reduce the sentence itself.  See CS § 3-702(a).  CS §

7-501(a)(3) provides that the DOC shall grant a conditional release from confinement to

an inmate who "has served the term or terms, less diminution credit[s] awarded under Title

3, Subtitle 7 and Title 11, Subtitle 5 of this article."  Under CS §§ 3-704, 3-705, 3-706, and

3-707, an inmate may earn diminution credits for good conduct, work tasks, education, or

special projects, respectively.  In addition, under CS § 3-706.1, credit can be earned for

successfully obtaining academic certificates, diplomas, or degrees.

Unlike other types of diminution credits, good conduct diminution of confinement

credits are awarded in advance at the start of the sentence being served.  CS § 3-704 titled,

"Diminution credits--good conduct," provides, in relevant part, as follows:

> (a) An incarcerated individual shall be allowed a deduction in advance from the incarcerated individual's term of confinement.
>
> (b)(1) The deduction allowed under subsection (a) of this section shall be calculated:
>
> > (i) from the first day of commitment to the custody of the Commissioner through the last day of the incarcerated individual's term of confinement;
> >
> > (ii) except as provided in paragraph (2) of this subsection, at the rate of 10 days for each calendar month; and
> >
> > (iii) on a prorated basis for any portion of a calendar month.
>
> (2) If an incarcerated individual's term of confinement includes a consecutive or concurrent sentence for a crime of violence as defined in § 14-101 of the Criminal Law Article or a crime of manufacturing, distributing, dispensing, or possessing a controlled dangerous substance in violation of § 5-612 or § 5-613 of the Criminal Law Article, the deduction described in subsection (a) of this section shall be calculated at the rate of 5 days for each

calendar month.[7]

Under CS § 3-709(a), good conduct and special projects diminution credits may be revoked where an incarcerated individual is found to have violated DOC rules of discipline. Pursuant to CS § 3-708, except as provided in CS § 3-706.1, an incarcerated individual may not be allowed a deduction of more than a total of twenty to thirty days each month depending on whether the individual's term of confinement includes a sentence for certain offenses described in CS § 3-707(a)(2).

**Mr. Fenton's Diminution of Confinement Credit Calculation and IGO Grievance**

In a letter dated March 7, 2019, the DOC notified Mr. Fenton that he was not eligible to receive diminution of confinement credits for the ten-year sentence imposed for the third-degree sexual offense conviction in Count 8. The DOC advised Mr. Fenton that CS § 3-702(c) precluded him from earning diminution credits for the sentence imposed on Count 8 as a result of him serving a sentence on Count 1, a sentence for a crime in violation of CR § 3-307. Mr. Fenton submitted to the Warden's Office a "Division of Correction Request for Administrative Remedy" form dated December 16, 2020, in which he asserted that CS § 3-702(c) had been improperly applied to his term of confinement. Mr. Fenton stated that "CS § 3-702(c) is meant to be applied to 'repeat offenders', that have been previously convicted of the same offense prior to the offense the statute is being applied

---

[7]Other forms of diminution credits, such as those awarded for work tasks, education, and special projects, are not given in advance of a sentence and are generally earned at a rate of five or ten days per month. See CS §§ 3-705, 3-706, 3-707. In addition, sixty days of credit can be earned per program completed for successful obtainment of certain academic certificates, diplomas, or degrees. See CS § 3-706.1.

to." (Underlining omitted). On December 22, 2020, the Warden signed a part of the administrative remedy request form titled "Response," which stated that the request for an administrative remedy had been dismissed. The response set forth the text of CS § 3-702(c) and advised: "3-702 was applied to your term as a result of the second conviction of sexual offense 3rd degree."

On December 31, 2020, Mr. Fenton submitted an appeal of the Warden's administrative remedy response to the Commissioner of Corrections. On March 3, 2021, the Commissioner responded by dismissing the appeal, finding that the Warden had fully addressed Mr. Fenton's complaint.

On March 14, 2021, Mr. Fenton filed a grievance with the IGO. In a letter dated September 23, 2021, the IGO dismissed the grievance, stating that "[w]hile the language of [CS] §[]3-702(c) does not include a definition of what is meant by 'previously convicted,' the Division of Correction has consistently interpreted it as applying to the factual circumstances of your case[.]" The IGO did not identify the type of diminution credits at issue but noted that Mr. Fenton would receive diminution credit of ten days per month on the sentences for Counts 1 and 11 but not on Count 8 due to the application of CS § 3-702(c).

**Mr. Fenton's Petition for Judicial Review**

On October 25, 2021, Mr. Fenton filed in the circuit court a petition for judicial review. On January 17, 2022, the circuit court issued an order, granting in part and denying in part Mr. Fenton's petition for judicial review and vacating in part and affirming in part the IGO's decision. The circuit court found that "the plain language of Correctional

- 10 -

Services Article (Corr. Servs.) § 3-702(c) prohibits [Mr. Fenton] from earning diminution of confinement credits under Corr. Servs. §§ 3-705 through 3-707 from the date he begins serving his ten-year sentence on Count 8[.]" According to the circuit court, the prohibition applied because on the date that Mr. Fenton will begin serving the sentence on Count 8, he will have been previously convicted of a separate violation of CR § 3-307 involving a victim who is a child under the age of 16 years in Count 1.

The circuit court determined that the prohibition of diminution of confinement credits under CS § 3-702(c) did not apply to good conduct credits awarded pursuant to CS § 3-704 for the sentence on Count 8 because the good conduct credits would be awarded "in advance" of the date that Mr. Fenton will begin serving the sentence on Count 8. The circuit court ordered that Mr. Fenton would receive good conduct credits at a rate of 10 days per month for the ten-year sentence on Count 8 for the period from December 29, 2026, until December 29, 2036, but that he would be disqualified from receiving diminution of confinement credits under CS §§ 3-705 through 3-707 for the same period.

**Opinion of the Appellate Court of Maryland**

On November 1, 2024, the Appellate Court issued a reported opinion, holding that CS § 3-702(c) does not prohibit Mr. Fenton from receiving diminution of confinement credits with respect to the sentence on Count 8 and vacating the judgment of the circuit court. See Fenton, 263 Md. App. at 630, 326 A.3d at 11. The Appellate Court held that CS § 3-702(c) does not prohibit Mr. Fenton from accruing any diminution of confinement credits for the sentence imposed as to Count 8 because he had not been "previously convicted" of a predicate offense at the time he committed the offense that was charged in

- 11 -

Count 8.  Id. at 630, 326 A.3d at 11.

In reaching this conclusion, the Appellate Court relied on this Court's holding in Gargliano, concerning the language "previously has been convicted" used in Art. 27, § 286(c).  Id. at 624, 326 A.3d at 7.[8]  The Appellate Court stated that this Court had concluded that the language of Art. 27, § 286(c) was ambiguous in that it "does not identify whether the prior conviction must be previous to the principal offense or merely previous to the sentencing for the enhanced penalty to apply."  Id. at 625, 326 A.3d at 8 (quoting Gargliano, 334 Md. at 434-35, 639 A.2d at 678).  The Appellate Court explained that, after canvassing the legislative history of the statute, this Court held that the enhanced penalty provision of Art. 27, § 286(c) is "applicable only if the defendant has been convicted of an earlier offense prior to the commission of the principal offense."  Id. at 627, 326 A.3d at 9 (quoting Gargliano, 334 Md. at 445, 639 A.3d at 683).  The Appellate Court concluded that there is

---

[8]Effective October 1, 2002, Art. 27, § 286 was recodified as Md. Code Ann., Crim. Law (2002) § 5-608.  See 2002 Md. Laws 197, 428-31 (H.B. 11, Ch. 26).  Currently, CR § 5-608(b) provides as follows:

A person who is convicted under subsection (a) of this section or of conspiracy to commit a crime included in subsection (a) of this section is subject to imprisonment not exceeding 20 years or a fine not exceeding $15,000 or both if the person previously has been convicted once:

(1) under subsection (a) of this section or § 5-609 of this subtitle; or

(2) of conspiracy to commit a crime included in subsection (a) of this section or § 5-609 of this subtitle; or

(3) of a crime under the laws of another state or the United States that would be a crime included in subsection (a) of this section or § 5-609 of this subtitle if committed in this State.

"no meaningful distinction" between the language of Art. 27, § 286(c) and CS § 3-702(c), and that the interpretation of the phrase "if the person previously has been convicted" set forth by this Court in <u>Gargliano</u> should apply equally to both statutes. <u>Fenton</u>, 263 Md. App. at 628, 326 A.3d at 10. The Appellate Court rejected the Secretary's contention that <u>Gargliano</u> does not apply because it concerns a statute that mandated enhanced penalties for defendants convicted of certain drug-related offenses, explaining that both statutes have the effect of increasing the amount of time a defendant spends in prison based on whether the defendant has been "previously convicted" of some other offense. <u>Id.</u> at 629, 326 A.3d at 10.

The Appellate Court pointed out that, at the time the General Assembly enacted CS § 3-702(c), <u>Gargliano</u> had been binding precedent for over fifteen years. <u>Id.</u> at 629, 326 A.3d at 10. The Appellate Court explained that it could therefore be presumed that, at the time it enacted CS § 3-702(c), the General Assembly was aware of this Court's holding in <u>Gargliano</u> with respect to application of the sentencing enhancement under Art 27, § 286(c) for a person who had previously been convicted of a crime. <u>See id.</u> at 629-30, 326 A.3d at 10-11. Applying this Court's statutory construction in <u>Gargliano</u>, the Appellate Court concluded that CS § 3-702(c) does not prohibit Mr. Fenton from accruing diminution of confinement credits for the sentence imposed as to Count 8 for the violation of CR § 3-307, as he had not been "previously convicted" of a violation of CR § 3-307 at the time he committed the offense charged in Count 8. <u>Id.</u> at 630, 326 A.3d at 11.

On November 27, 2024, the Secretary filed a Motion for Reconsideration, alleging that the Appellate Court did not account for "fundamental differences" between the

enhanced sentence statute at issue in <u>Gargliano</u> and CS § 3-702(c). On December 20, 2024, the Appellate Court denied the motion for reconsideration.

**Petition for a Writ of *Certiorari* and Motion to Stay Enforcement of Mandate**

On December 23, 2024, the Secretary petitioned for a writ of *certiorari*, raising the following issue:

> Did the Appellate Court err in holding that Correctional Services Article § 3-702(c), which prohibits an inmate from earning diminution credits "while serving a sentence for" a third-degree sex offense involving a victim under 16 if the inmate "was previously convicted of" such an offense, applies only where the "previous[] convict[ion]" occurred before commission of the offense for which the inmate is "serving a sentence"?

(Alterations in original). On the same day, the Secretary filed a "Motion to Stay Enforcement of Mandate," requesting that this Court issue an order staying enforcement of the Appellate Court's mandate pending our disposition of the matter. On December 27, 2024, this Court issued an order granting the motion to stay enforcement and ordering that enforcement of the Appellate Court's mandate in the case be stayed pending further order of this Court. On January 27, 2025, we granted the petition for a writ of *certiorari* and extended the stay of the enforcement of the Appellate Court's mandate through the resolution of the case in this Court. See <u>Fenton</u>, 489 Md. 330, 330 A.3d 658.

**DISCUSSION**

**A. Standard of Review**

Because the IGO is an entity of the DPSCS, <u>see</u> CS § 10-202, this Court's review of IGO decisions is governed by the Administrative Procedure Act, <u>see</u> <u>Watkins v. Sec'y, Dep't of Pub. Safety and Corr. Servs.</u>, 377 Md. 34, 45-46, 831 A.2d 1079, 1086 (2003) (citing CS § 10-202; Md. Code Ann., State Gov't (1984, 1999 Repl. Vol.) § 10-222). When

- 14 -

reviewing the decision of an administrative agency, we evaluate the decision of the agency, not the circuit court. See Watkins, 377 Md. at 46, 831 A.2d at 1086. This Court "may always determine whether the administrative agency made an error of law[,]" which typically "requires considering (1) the legality of the decision and (2) whether there was substantial evidence from the record as a whole to support the decision." Id. at 46, 831 A.2d at 1086 (cleaned up); see also Gigeous v. E. Corr. Inst., 363 Md. 481, 496, 769 A.2d 912, 922 (2001) (same).

"Generally, we review legal determinations without deference to the views of the intermediate appellate court, trial court, or administrative agency." McDonell v. Harford Cnty. Hous. Agency, 462 Md. 586, 605, 202 A.3d 540, 551 (2019) (citation omitted). Although we have stated that "[t]he Court's task is not to substitute its judgment for the expertise of those persons who constitute the administrative agency[,]" "when an order or decision involves an interpretation and application of Maryland statutory and case law, this falls within the Court's expertise and [we] review[] the issue without deference to the deciding body." Id. at 605, 202 A.3d at 551 (cleaned up).

## B. CS § 3-702

CS § 3-702 states as follows:

(a) Subject to subsections (b) and (c) of this section, § 3-711 of this subtitle, and Title 7, Subtitle 5 of this article, an incarcerated individual committed to the custody of the Commissioner is entitled to a diminution of the incarcerated individual's term of confinement as provided under this subtitle.

(b) (1) Subject to paragraph (2) of this subsection, an incarcerated individual who is serving a sentence for a violation of § 3-303 or § 3-304 of the Criminal Law Article involving a victim who is a child under the age of

- 15 -

16 years, or an incarcerated individual who is serving a sentence for a violation of § 3-305 or § 3-306 of the Criminal Law Article, as the sections existed before October 1, 2017, involving a victim who is a child under the age of 16 years, is not entitled to a diminution of the incarcerated individual's term of confinement as provided under this subtitle.

(2) An incarcerated individual who is serving a sentence for a violation of § 3-303 of the Criminal Law Article that occurred on or after October 1, 2024, is not entitled to a diminution of the incarcerated individual's term of confinement as provided under this subtitle.

(c) An incarcerated individual who is serving a sentence for a violation of § 3-307 of the Criminal Law Article involving a victim who is a child under the age of 16 years is not entitled to a diminution of the incarcerated individual's term of confinement as provided under this subtitle, if the incarcerated individual was previously convicted of a violation of § 3-307 of the Criminal Law Article involving a victim who is a child under the age of 16 years.[9]

### C. CR § 3-307

CR § 3-307 states, in relevant part, as follows:

(a) A person may not:

. . .

(4) engage in a sexual act with another if the victim is 14 or 15 years old, and the person performing the act is at least 21 years old; or

(5) engage in vaginal intercourse with another if the victim is 14 or 15 years old, and the person performing the act is at least 21 years old.

(b) A person who violates this section is guilty of the felony of sexual offense

---

[9]At the time that Mr. Fenton committed the third-degree sexual offenses at issue, CS (1999, 2008 Repl. Vol., 2016 Supp.) § 3-702(c) provided the same as it currently does, with the exception that the prior version of the statute referred to "inmate" rather than "incarcerated individual."

- 16 -

in the third degree and on conviction is subject to imprisonment not exceeding 10 years.

### D. Principles of Statutory Construction

"The cardinal rule of statutory construction is to ascertain and effectuate the General Assembly's intent." Conaway v. State, 464 Md. 505, 522, 212 A.3d 348, 358 (2019) (cleaned up). To ascertain legislative intent, we "start[] with the plain meaning of the statutory language in question." In re M.P., 487 Md. 53, 67, 314 A.3d 348, 356 (2024) (cleaned up). In interpreting the language of a statute, we begin by examining "the normal, plain meaning of the statute" to determine whether its language is ambiguous. State v. Bey, 452 Md. 255, 265, 156 A.3d 873, 878 (2017) (citation omitted). "We begin with the normal meaning of the text because we presume that the General Assembly meant what it said and said what it meant." M.P., 487 Md. at 67, 314 A.3d at 356 (cleaned up). "[T]he plain language of a statute must be viewed within the context of the statutory scheme to which it belongs," taking into consideration "the purpose, aim, or policy of the [General Assembly] in enacting the statute." Id. at 67-68, 314 A.3d at 356 (cleaned up).

We interpret the statute "as a whole, so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless or nugatory." Woodlin v. State, 484 Md. 253, 279, 298 A.3d 834, 849 (2023) (citation omitted). "We presume that the [General Assembly] intends it enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope." Bey, 452 Md. at 266, 156 A.3d at 879 (citation omitted). If the language of the statute is unambiguous, we apply it "as

written[,]" neither adding nor deleting language to reflect an alternate intent not evidenced by the language of the statute. Id. at 265, 156 A.3d at 878 (citation omitted).

If the language of a statute is ambiguous, we resolve the ambiguity by reviewing legislative history, searching for "the purpose, aim, or policy of the [General Assembly] in enacting the statute[,]" *i.e.*, legislative intent. Id. at 266, 156 A.3d at 878-79 (citation omitted). We have explained "that there is an ambiguity within a statute when there exist two or more reasonable alternative interpretations of the statute." Wagner v. State, 445 Md. 404, 418, 128 A.3d 1, 9 (2015) (cleaned up). With respect to criminal statutes, we have stated that "highly penal" statutes "must be strictly construed so that only punishment contemplated by the language of the statute is meted out" and "a milder penalty over a harsher one will be favored." Gargliano, 334 Md. at 437, 639 A.2d at 679 (cleaned up).

### E. Gargliano

In Gargliano, 334 Md. at 431, 639 A.2d at 676, this Court construed a criminal statute, Art. 27, § 286(c), which mandated imposition of an enhanced penalty at sentencing for repeat offenders of controlled dangerous substance laws. Art. 27, § 286(c) provided "that a defendant who 'previously has been convicted' of a similar offense is subject to a sentence of not less than ten years imprisonment." Id. at 431, 639 A.2d at 676.[10] We held

---

[10]Art. 27, § 286(c) provided as follows:

(c)(1) A person who is convicted under subsection (b)(1) or subsection (b)(2) of this section, or of conspiracy to violate subsection (b)(1) or (b)(2) of this section shall be sentenced to imprisonment for not less than ten years if the person previously has been convicted:

that the enhanced penalty mandated by Art. 27, § 286(c) is triggered "only where the conviction for a prior offense precedes the commission of the principal offense[.]" Id. at 431, 639 A.2d at 676 (emphasis omitted).

We pointed out that "[s]ection 286(c) does not identify whether the prior conviction must be previous to the principal offense or merely previous to the sentencing for the enhanced penalty to apply." Id. at 434-45, 639 A.2d at 678. We explained that the defendant argued that the word "previously" in Art. 27, § 286(c) meant "prior to the commission of the principal offense[,]" whereas the State argued that "previously" meant "prior to sentencing on the principal offense." Id. at 438, 639 A.2d at 679. Applying the principles of statutory construction, we concluded that both the defendant's and the State's interpretation of the phrase "previously has been convicted[,]" which was not defined in the statute, could be seen as reasonable, and that consequently Art. 27, § 286(c) was ambiguous. Id. at 439, 639 A.2d at 680.

After reviewing the legislative history of Art. 27, § 286, we did not uncover "any discussion" concerning the meaning of the phrase "previously has been convicted." Id. at

---

(i) Under subsection (b)(1) or subsection (b)(2) of this section;

(ii) Of conspiracy to violate subsection (b)(1) or subsection (b)(2) of this section; or

(iii) Of an offense under the laws of another state, the District of Columbia, or the United States that would be a violation of subsection (b)(1) or subsection (b)(2) if committed in this State.

Gargliano, 334 Md. at 433-34, 639 A.2d at 677 (footnotes and emphasis omitted).

441-42, 639 A.2d at 681. We concluded, though, that "[t]he clear import of the language used throughout § 286 is that the Legislature sought to impose more stringent penalties on certain offenders who repeatedly persist in a pattern of criminal conduct." Id. at 442, 639 A.2d at 681. We stated that "we have found that such statutes were enacted with the purpose of identifying defendants who have not reformed their behavior after prior convictions and incarcerating such defendants for a longer period than would otherwise be applicable in order to protect the community and deter others from similar behavior." Id. at 444, 639 A.2d at 682 (citations omitted).

> We explained that achieving deterrence requires
>
> the provision of fair warning to previous offenders that if they continue to commit criminal acts after having had the opportunity to reform after one or more prior contacts with the criminal justice system, they will be imprisoned for a considerably longer period of time than they were subject to as first offenders.

Id. at 444, 639 A.2d at 682-83. We concluded that the defendant's sentence for the principal offense of cocaine distribution could not be enhanced under Art. 27, § 286(c) by his prior convictions for distribution of cocaine because the convictions were entered after the commission of the principal offense. See id. at 449, 639 A.2d at 685.

### F. Rule of Lenity

"When a court construes a criminal statute, it may invoke a principle known as the 'rule of lenity' when the statute is open to more than one interpretation and the court is otherwise unable to determine which interpretation was intended by the Legislature." Oglesby v. State, 441 Md. 673, 676, 109 A.3d 1147, 1149 (2015). When "a court[,] using the tools of statutory construction[,]" is unable to determine the General Assembly's intent,

the rule of lenity is invoked as "a tiebreaker that favors [the] defendant[.]" Clark v. State, 473 Md. 607, 622, 251 A.3d 1144, 1152 (2021) (citation omitted). In Oglesby, 441 Md. at 681, 109 A.3d at 1151, we stated:

> The "rule of lenity" is not a rule in the usual sense, but an aid for dealing with ambiguity in a criminal statute. Under the rule of lenity, a court confronted with an otherwise unresolvable ambiguity in a criminal statute that allows for two possible interpretations of the statute will opt for the construction that favors the defendant. For a court construing a statute, the rule of lenity is not a means for determining—or defeating—legislative intent. Rather, it is a tie-goes-to-the-runner device that the court may turn to when it despairs of fathoming how the General Assembly intended that the statute be applied in the particular circumstances. It is a tool of last resort, to be rarely deployed and applied only when all other tools of statutory construction fail to resolve an ambiguity.

(Citation omitted). In Md. House of Corr. v. Fields, 348 Md. 245, 267, 703 A.2d 167, 178 (1997), abrogated on other grounds as stated in Moats v. Scott, 358 Md. 593, 751 A.2d 462 (2000), in interpreting a diminution of credits statute, we explained that, although the statute at issue did "not establish punishment," it "set forth a significant procedure for shortening the punishment an inmate receives[,]" and as such, we saw "no reason why the rule of lenity should not be utilized[.]" In other words, we held that the rule of lenity applies to a diminution of confinement credits statute.

### G. Applying the Principles Above to this Case

### 1. CS § 3-702(c): Plain Language

The Secretary contends that a previous conviction under CS § 3-702(c) may include a conviction of CR § 3-307 on a different count within in the same case as the conviction of CR § 3-307 for which an incarcerated person is serving a sentence. The Secretary argues that "[w]hen Mr. Fenton begins serving his second ten-year sentence on December 29,

2026, he will have been 'previously convicted' of a third-degree sex offense involving a victim under the age of 16—namely, the offense for which he will have just finished serving a ten-year sentence"—and, as such, under CS § 3-702(c), he is not entitled to diminution credits while he is serving the second ten-year sentence. Mr. Fenton contends that, because his convictions of CR § 3-307 took place during a single criminal sentencing proceeding, *i.e.*, none of the convictions preceded the commission of another offense, CS § 3-702(c) does not apply. Both parties contend that the language of the statute is unambiguous, and if properly interpreted, supports the outcome that they seek.

This case presents a classic question of statutory construction. CS § 3-702(c) provides that an incarcerated person who is serving a sentence for a violation of CR § 3-307 involving a victim who is a child under the age of 16 years "is not entitled to a diminution of the incarcerated individual's term of confinement as provided under this subtitle, if the incarcerated individual was previously convicted of" the same offense involving a child victim under the age of 16. CS § 3-702(c) is unambiguous in that a previous conviction of CR § 3-307 involving a child victim under the age of 16 precludes an incarcerated individual from receiving diminution credits, but the statute contains no definition of the phrase "previously convicted." The first question is whether we can ascertain the legislative intent underlying CS § 3-702(c)'s use of the phrase "previously convicted" by reviewing the statute's plain language. As explained above, when an agency's decision concerns interpretation and application of Maryland statutory and case law, we review the matter without deference. See McDonell, 462 Md. at 605, 202 A.3d at 551 (citation omitted). That is the circumstance here.

- 22 -

In addition to the applicable standard of review requiring that the plain language analysis be conducted without deference, in this case, there can be no real question concerning any deference to be accorded to the IGO's determination because the sole reason given by the IGO for its decision was that this is the way the DOC has always interpreted the statute. The IGO dismissed Mr. Fenton's grievance without attempting to interpret the language of CS § 3-702(c), finding only that because the DOC has regularly interpreted CS § 3-702(c) in a manner that would apply to Mr. Fenton's circumstances, the grievance was dismissed. The IGO stated:

> While the language of §[]3-702(c) does not include a definition of what is meant by "previously convicted," the Division of Correction has consistently interpreted it as applying to the factual circumstances of your case, and therefore, it is entitled to be given weight when deciding who is and who is not entitled to diminution credits. Accordingly, your grievance is dismissed pursuant to § 10-207 of the Correctional Services Article.

The IGO did not engage in any analysis of the language of CS § 3-702(c) and provided no grounds or reasoning on which the DOC's interpretation was said to be based.[11]

The Appellate Court, on the other hand, considered the plain meaning of the phrase "previously convicted" within CS § 3-702(c) and concluded that the language is ambiguous. See Fenton, 263 Md. App. at 623-24, 326 A.3d at 7. We completely agree. We are not persuaded by the parties' contentions that CS § 3-702(c) is unambiguous, or that its plain language alone supports either party's interpretation. The language of CS §

---

[11]In its decision, the IGO stated that "[t]he Warden, the Commissioner, and the Director of the Commitment Unit of the Division of Correction all agree that the conviction in Count 1 is a previous conviction for purposes of [CS] §[]3-702(c) and operates to prevent the accumulation of diminution credit on your conviction in Count 8."

3-702(c) does not identify when a conviction must have occurred for it to be considered a previous conviction or describe any event that a conviction must precede for it to be considered a previous conviction. The language of the statute is capable of more than one interpretation in that it is unclear whether, if to be considered a previous conviction, a conviction must occur before sentencing on another violation of CR § 3-307 or whether a previous conviction must take place before the commission of the offense for which a sentence for a violation of CR § 3-307 is imposed.

CS § 3-702(a) and (b) do not contain the words "previously convicted" and thus shed no light on the construction of the phrase "previously convicted" contained in CS § 3-702(c).[12] An ambiguity exists in the plain language of CS § 3-702(c) as to the meaning of the phrase "previously convicted" that is not resolved by reviewing other provisions of CS § 3-702. Because CS § 3-702(c) and its statutory scheme give rise to no clear plain language interpretation of the phrase "previously convicted[,]" we conclude that the phrase is ambiguous. We must resolve the ambiguity by reviewing the statute's legislative history.

---

[12]A review of the larger statutory scheme, CS §§ 3-701 to 3-711, the subtitle concerning diminution credits, reveals that no other statute in the subtitle contains a provision with the phrase "previously convicted." In all of Title 3, Division of Correction, the phrase "previously convicted" appears in only one other place—CS § 3-605, which provides: "If, in the trial of a criminal case, the fact that an individual was previously convicted of a crime is admissible in evidence, the case record maintained under § 3-601 of this subtitle is admissible in evidence to prove the fact of the conviction and of the crime for which the individual was convicted." That statute, like CS § 3-702(c), does not define "previously convicted," but it is clear from the context in which the phrase is used in CS § 3-605 that "previously convicted" necessarily means a conviction that precedes commission of the offense for which the individual is on trial.

## 2. CS § 3-702(c): Legislative History

In 2010, the General Assembly enacted House Bill 599 as CS § 3-702(c), effective October 1, 2010. See 2010 Md. Laws 1353-55 (H.B. 599, Ch. 183).[13] The legislative history of CS § 3-702(c) demonstrates that, in enacting the provision, the General Assembly intended to deter repeat offenders[14] from the commission of new third degree-sexual

---

[13]When originally enacted in 1999, CS § 3-702 provided in its entirety as follows: "Subject to § 3-711 of this subtitle and Title 7, Subtitle 5 of this Article, an inmate committed to the custody of the Commissioner is entitled to a diminution of the inmate's term of confinement as provided under this subtitle." See 1999 Md. Laws 445, 536 (H.B. 11, Ch. 54).

[14]Black's Law Dictionary defines "repeat offender" as "[s]omeone who has been convicted of a crime more than once; RECIDIVIST." *Repeat Offender*, Black's Law Dictionary (12th ed. 2024). "Recidivist," in turn, is defined as "[s]omeone who has been convicted of multiple criminal offenses, usu[ally] similar in nature; a repeat offender" and as "[a] criminal who, having been punished for illegal activities, resumes those activities after the punishment has been completed[.]" *Recidivist*, Black's Law Dictionary (12th ed. 2024). A "recividist" is "[a]lso termed habitual offender; habitual criminal; repeater; career criminal; prior and persistent offender[.]" Id. (italics omitted).

Maryland case law has referred to "repeat offender" in the same way, *i.e.*, as a recidivist, not as a first-time offender who commits and is tried for multiple crimes at the same time. See, e.g., Rush v. State, 403 Md. 68, 93, 939 A.2d 689, 703 (2008) (stating, in relevant part, that whether a suspect in custody is "a repeat offender familiar with the criminal justice system or an individual with a previously clean record does not vary the fact that sufficient *Miranda* warnings must be given"); Collins v. State, 383 Md. 684, 692, 861 A.2d 727, 732 (2004) (stating that "[t]he purpose of any repeat-offender penalty enhancement is to create a differential in the potential punishments imposed upon first-time and repeat offenders"); Whack v. State, 338 Md. 665, 680, 659 A.2d 1347, 1354 (1995) (stating that the purpose of two enhanced sentencing statutes was "to protect society against repeat drug offenders and to deter recidivism by imposing greater sanctions on repeat offenders"); Montone v. State, 308 Md. 599, 614, 521 A.2d 720, 727 (1987) (stating that a habitual criminal statute was "narrowly directed towards repeat offenders of violent crimes who, having been exposed to the correctional system three distinct times, have failed to learn to coexist peacefully within society"). The General Assembly is presumed to be aware of this Court's case law. See, e.g., Lawrence v. State, 475 Md. 384, 414, 257 A.3d 588, 605 (2021) ("The General Assembly is presumed to be aware of this Court's interpretation of its enactments and, if such interpretation is not legislatively overturned,

offenses.[15]  Demonstrating the point, House Bill 599 was titled "Correctional Services – Repeat Child Sexual Offenders – Diminution Credits[.]"  House Bill 599 explicitly stated that it was for

> the purpose of prohibiting the earning of diminution credits to reduce the term of confinement of a certain inmate who is serving a sentence . . . for committing a certain sexual offense against a victim who is a child under a certain age *after being previously convicted* of a certain sexual offense against a victim who is a child under a certain age[.]

2010 Md. Laws 1353 (emphasis added) (cleaned up); see also First Reading, H.B. 599, 2010 Gen. Assemb., Reg. Sess. (Md. 2010), available at https://mgaleg.maryland.gov/ 2010rs/bills/hb/hb0599f.pdf [https://perma.cc/KF3V-AF9M]    ("FOR the purpose of prohibiting the earning of diminution credits to reduce the term of confinement of a certain inmate who is serving a sentence for a certain sexual offense against a minor after being previously convicted of a certain sexual offense against a minor.").

The revised Fiscal and Policy Note for House Bill 599 states at the outset:

This bill prohibits the earning of diminution credits in a State or local

_____

to have acquiesced in that interpretation."  (Cleaned up)); Berry v. Queen, 469 Md. 674, 698, 233 A.3d 42, 56 (2020) ("This Court presumes that the General Assembly is aware of our jurisprudence when it enacts new legislation."  (Citation omitted)).

[15]House Bill 599 and House Bill 289 repealed CS § 3-702 and CS § 11-502 and reenacted the statutes with new provisions.  See 2010 Md. Laws 1353-55; 2010 Md. Laws 1351-53 (H.B. 289, Ch. 182).  House Bill 289 of the 2010 legislative session was enacted as CS § 3-702(b) and "remove[d] all diminution case credits for rape in the first degree [and] rape in the second degree," and sexual offense in the first and second degrees, for an inmate serving a sentence for such crimes involving a victim under 16 years of age. Statement of Chairman Joseph F. Vallario, Jr., Hearing on H.B. 599 Before the Md. House of Delegates, 2010 Gen. Assemb., Reg. Sess., at 1:48:40 to 1:48:50 (Mar. 17, 2010), available    at    https://mgahouse.maryland.gov/mga/play/35a26871-a895-49bc-bc70-2f99323955f0?catalog/03e481c7-8a42-443-a7da-93ff74bdaa4c; 2010 Md Laws 1352.  CS § 11-502 concerned prohibiting receipt of diminution of confinement credits in local correctional facilities.  See 2010 Md. Laws 1353-54.

correctional facility to reduce the term of confinement of an inmate who is serving a sentence for committing third degree sexual offense against a child under the age of 16 after being previously convicted of a third degree sexual offense against a child under the age of 16.

Fiscal and Policy Note (Revised), at 1, H.B. 599, 2010 Gen. Assemb., Reg. Sess. (Md. 2010), available at https://mgaleg.maryland.gov/2010rs/fnotes/bil_0009/hb0599.pdf [https://perma.cc/39HY-5RMQ]. In a section titled "Analysis," the revised Fiscal and Policy Note sets forth information about the then-current size of the inmate population in State correctional facilities and how DOC tracked data concerning inmates and the offense for which each person is remanded to its custody. See id. at 2. The Note explains that the DOC did not track intake or standing population data reflecting the age of a victim and that "the offense code for assault of a minor d[id] not necessarily involve any sexual elements to the underlying crime." Id. In describing the potential number of inmates serving sentences for one of the offenses that House Bill 599 would cover, the Note states:

> Currently, approximately 27,000 persons are serving a prison sentence in State correctional facilities. DOC tracks data on inmate populations by "unique offense" and "most serious offense" for each person remanded to its custody. Conviction information within this tracking system is collected at intake and maintained over time so as to reflect the standing population at any given time. Within each of these offense categorizations, the division has assigned a specific offense coding number, known as the Offender Based State Correctional Information System Code.
>
> . . . The number of sexual offenders serving a term in a DOC facility or the Patuxent Institution for one of the covered offenses under this bill in 2008 was estimated to be about 2,300 persons. Of that total, about 370 are serving a life term. It is unknown how many of these offenders are serving a term as a repeat offender[16] or whose crime had a minor victim.

---

[16]Given that the revised Fiscal and Policy Note states that the DOC tracks offense data on the inmate population and assigns a specific offense coding number by "unique

Id. A Floor Report from the Senate Judicial Proceedings Committee for House Bill 599 sets forth the same background information contained in the revised Fiscal and Policy Note and, at the end of the report, under a section titled "Fiscal Impact," as to the "State Effect," states: "Because of the limited number of offenders believed to be affected, the bill's provisions can be handled by existing budgeted resources of the Division of Correction (DOC), the Office of the Public Defender, and the courts for the foreseeable future." Floor Report, at 2, H.B. 599, 2010 Gen. Assemb., Reg. Sess. (Md. 2010).

Letters in which the bill's lead sponsor, Delegate John A. Olszewski, Jr., sought the support of the Chair of the House Judiciary Committee and the Chair of the Senate Judicial Proceedings Committee, and their respective Committee members, demonstrate that CS § 3-702(c) was intended to apply to repeat offenders who committed a second third-degree sexual offense after having served a sentence for the same offense. In a letter to Joseph F. Vallario, Jr., the then-Chairman of the House Judiciary Committee, and the members of the Committee, dated February 23, 2010, captioned "In SUPPORT of HB 599-Repeal of Diminution Credits for Repeat Child Sex Offenders," Delegate Olszewski explained the

---

offense" and "most serious offense" and it is unknown how many of the sexual offenders are serving sentences as repeat offenders, it is clear that the term "repeat offender" does not apply to someone who was convicted of more than one sexual offense at the same time and, as a result, is serving multiple sentences for sexual offenses at the same time. There was no indication at the time that the revised Fiscal and Policy Note was issued that the DOC offense tracking data contained criminal history information about inmates which would permit a determination of whether inmates currently serving sentences for sexual offenses had previously served a sentence for a similar offense and incurred a new conviction and sentence of incarceration. Thus, the Fiscal and Policy Note concluded that it was unknown how many of the offenders were serving a term as a repeat offender.

need for the new provision and its purpose. Delegate Olszewski began by stating that the rate of recidivism for sex offenders is four times higher than that of any other category of crime and that, "[w]hile hard to believe, those in Maryland convicted a *second* time of violent sexual crimes against children are ***still eligible*** to receive diminution credits reducing their sentence[.]" (Emphasis in original). Delegate Olszewski advised that while he could understand the Committee's reluctance to eliminate diminution credits for first-time offenders, he failed "to see the justice in enabling second-time child sex offenders the ability to earn early release."

Delegate Olszewski explained that House Bill 599 "would repeal diminution credits for repeat child sexual offenders[,]" and that "[t]his is the logical step toward proving we are serious about upholding our recently enacted mandatory minimums for child sex offenders." Delegate Olszewski stated:

> I agree with the sentiment that those convicted of sex offenses should receive sex offender treatment during their time of imprisonment in the Department of corrections. This is not only the most cost efficient method of rehabilitation- given that Maryland is a state facing a budgetary dilemma- but the safest method of treatment, as it is the only way that we can ensure that offenders are receiving treatment without being faced with the temptation to reoffend.
>
> The data supports the presupposition. Compared to men who were confined for 7-12 months (a 6.2% re-arrest rate), those who served more time were less likely to be re-arrested for any new sex crime. (4.1%) Serving a more complete prison sentence then not only increases the ability to provide treatment but it also greatly reduces the likelihood of re-arrest.
>
> District 6 has 231 registered child sexual offenders, which is approximately 18 times more than District 42, 26 times more than District 11, and 38 more times than District 7. Repealing diminution credits for repeat child sex offenders can also serve as a deterrent for re-offending, which is important as I strive to protect the safety of those constituents who are the least able to

protect themselves.

(Footnotes and emphasis omitted).

After this, Delegate Olszewski stated that, "[i]n the unfortunate event that an offender commits another child sexual offense, . . . the passage of this legislation will ensure that person gets the penalties they deserve." In a letter dated April 6, 2010, also captioned "In SUPPORT of HB 599 – Repeal of Diminution Credits for Repeat Child Sex Offenders," Delegate Olszewski conveyed the same information to Brian E. Frosh, the then-Chairman of the Senate Judicial Proceedings Committee, and the members of the Committee.[17]

---

[17]Mr. Fenton contends that, at a floor session regarding a proposed amendment to House Bill 599 on March 17, 2010, a delegate proposed, among other amendments, an amendment that would have struck the language "previously convicted" from the bill and removed the word "repeat" from the bill's title, but the amendment was defeated. According to Mr. Fenton, that the proposed amendment was not passed demonstrates that the General Assembly intended "to craft a more tailored mechanism in contrast to subsection (b)'s blanket ban[,]" *i.e.*, that the General Assembly declined to broaden the scope of House Bill 599 by making it applicable to anyone convicted of a violation of CR § 3-307. House Bill 599 involved the repeal and reenactment of both CS § 3-702 and CS § 11-502, and contained amendments approved by the General Assembly precluding diminution credits in State and local correctional facilities, respectively, after a previous conviction of CR § 3-307 involving a victim who was a child under the age of 16.

Based on our review of the legislative history of House Bill 599, the amendment that was defeated pertained to both CS § 3-702 and CS § 11-502 and, if passed, would have caused CS § 3-702 to apply in the manner that the Secretary now contends. We agree that the defeat of the amendment is part of the legislative history indicating that House Bill 599 was intended to preclude diminution of confinement credits where an offender had violated CR § 3-307 after a prior conviction, *i.e.*, where the offender was a repeat offender, and not a first-time offender with multiple convictions occurring at the same time. See First Reading, H.B. 599, 2010 Gen. Assemb., Reg. Sess. (Md. 2010), available at https:// perma.cc/ KF3V-AF9M; Amendment Number 782019/02 (offered Mar. 16, 2010), H.B. 599, 2010 Gen. Assemb., Reg. Sess. (Md. 2010), available at https://mgaleg. maryland.gov/2010rs/amds/bil_0009/hb0599_78201902.pdf [https:// perma.cc/2S47-

The legislative history of CS § 3-702(c) reveals that the General Assembly enacted the provision with the intent of ensuring that repeat offenders were deterred from reoffending by being barred from receiving diminution credits. Read in its entirety, Delegate Olszewski's letter to Delegate Vallario and Senator Frosh demonstrates that his primary concern in proposing House Bill 599 was to address the rate of recidivism for sex offenders, which he described as four times higher than that for other categories of crime. Delegate Olszewski recognized that while sex offender treatment during imprisonment and serving a more complete sentence which increased the ability to provide treatment reduced the likelihood of re-arrest, repealing diminution credits for repeat child offenders can also serve as a deterrent for reoffending. In describing House Bill 599 and seeking support for the bill from the House Judiciary and Senate Judicial Proceedings Committees, Delegate Olszewski explicitly stated that, "[i]n the unfortunate event that an offender *commits* another child sexual offense, . . . the passage of this legislation will serve to ensure that person gets the penalties they deserve." (Emphasis added). The information set forth in House Bill 599's revised Fiscal and Policy Note about the number of sex offenders serving a term for one of the covered offenses, 2,300 persons, and the number of "repeat offenders" serving sentences for child sex offenses—specifically, that it was "unknown how many of

KH6Z] (amendment approved); Amendment Number 143023/01 (offered Mar. 17, 2010), H.B. 599, 2010 Gen. Assemb., Reg. Sess. (Md. 2010), available at https:// mgaleg.maryland.gov/2010rs/amds/bil_0009/hb0599_14302301.pdf [https:// perma.cc/HTT8-AL3K] (amendment rejected); see also Hearing on H.B. 599 Before the Md. House of Delegates, 2010 Gen. Assemb., Reg. Sess., at 1:45:58 to 1:55:38 (Mar. 17, 2010), available at https://mgahouse.maryland.gov/mga/play/35a26871-a895-49bc-bc70-2f99323955f0?catalog/03e481c7-8a42-443-a7da-93ff74bdaa4c.

the[] offenders [were] serving a term as a repeat offender or whose crime had a minor victim"—demonstrates that the bill was intended to affect a limited number of individuals who reoffend, not every defendant who might be sentenced for multiple counts of violating CR § 3-307 at the same time.[18]

### 3. Case Law and CS § 3-702(c)

The Secretary contends that the Appellate Court erred in deciding that Gargliano mandated the outcome it reached because the case concerned a criminal sentencing statute which, according to the Secretary, has no application to the awarding of criminal diminution credits. Mr. Fenton responds that the Secretary misunderstands the purpose of Art. 27, § 286(c), the statute at issue in Gargliano, and that, as the Appellate Court correctly recognized, CS § 3-702(c)'s reference to a "previous conviction" must be read in light of Gargliano. Although we are unpersuaded by the Secretary's assertion that Gargliano has no application to the interpretation of CS § 3-702(c), we do not conclude, as Mr. Fenton contends, that our interpretation of CS§ 3-702(c) must be grounded on Gargliano. In Gargliano, we concluded that language almost identical to that of CS § 3-702(c) was

---

[18]Since 2010, the language of CS § 3-702(c) has been amended only once. In 2023, the General Assembly amended CS § 1-101(k) to change the word "inmate" to "incarcerated individual." 2023 Md. Laws (S.B. 293, Ch. 721), available at https://perma.cc/JZY2-FTLB. As a result of that change, the General Assembly corrected cross-references or terminology rendered incorrect by the Act, which included changing the word "inmate" to "incarcerated individual" in CS § 3-702(c). Id. The Act took effect October 1, 2023. See id. Other amendments of the statute in 2017 and 2024 have not affected the language of CS § 3-702(c). See 2017 Md. Laws 1401-02 (S.B. 944, Ch. 161); 2017 Md. Laws 1417-19 (H.B. 647, Ch. 162); 2024 Md. Laws (S.B. 1098, Ch. 712), available at https://mgaleg.maryland.gov/2024RS/chapters_noln/Ch_712_sb1098T.pdf [https://perma.cc/3T82-45HF].

ambiguous and that to resolve the ambiguity it was necessary to review of the statute's legislative history. Art. 27, § 286(c) and CS § 3-702(c) undeniably contain nearly identical language, which results in a person who "previously has been convicted" of or "was previously convicted of," respectively, a specific type of offense spending more time in prison upon conviction of the same offense. Given the similarity of the language in both statutes, the statutory construction set forth in <u>Gargliano</u> concerning Art. 27, § 286(c) supports the conclusion that the language of CS § 3-702(c) is ambiguous. Like the Appellate Court, we see "no meaningful distinction" between the language of statutes that warrants construing one differently than the other with respect to a determination as to ambiguity. <u>Fenton</u>, 263 Md. App. at 628, 326 A.3d at 10.

We need not, however, rely on the legislative history of Art. 27, § 286(c) or our holding in <u>Gargliano</u> to conclude that, under CS § 3-702(c), the previous conviction must occur before the commission of the offense for the sentence at issue. The legislative history of CS § 3-702(c) itself reconciles the ambiguity in the language of the statute. Although the relevant language of CS § 3-702(c) and Art. 27, § 286(c) may apply in similar manner, this is a result of our independent review of the legislative history of CS § 3-702(c) demonstrating that the General Assembly's intent in amending the statute was to deter repeat offenders.

While contending that <u>Gargliano</u> is inapplicable, the Secretary argues that the Appellate Court's holding in <u>Smith v. State</u>, 140 Md. App. 445, 780 A.2d 1199 (2001), supports its position concerning the interpretation of CS § 3-702(c). The Secretary asserts that because, in <u>Smith</u>, the Appellate Court concluded that "when an inmate's term of

confinement contains a combination of disqualifying and non-disqualifying sentences, the Division must permit the inmate to earn double-celling credits when the inmate is serving the non-disqualifying sentences[,]" CS § 3-702 permits Mr. Fenton to earn diminution credits while he serves the initial ten-year sentence for third-degree sexual offense but prohibits him from earning such credits for the consecutive sentence. In Smith, 140 Md. App. at 448-49, 450-52, 780 A.2d at 1201, 1203-04, the Appellate Court was called upon to determine whether under a prior version of CS § 3-702 a defendant was ineligible for "special project" diminution credits for "'double celling' (*i.e.*, being confined in a cell with another inmate)" for a term of confinement where the term included sentences that were both eligible and ineligible for double celling.[19] The Appellate Court held that the defendant was eligible for double celling credits against an eligible sentence because the plain language of a then-applicable DOC regulation and CS §§ 3-702 and 3-707 indicated that once a defendant finished an ineligible sentence and began a consecutive eligible

---

[19]At that time, CS § 3-702 provided that "an inmate committed to the custody of the Commissioner [of Correction] is entitled to a diminution of the inmate's term of confinement as provided under this subtitle." Smith, 140 Md. App. at 452, 780 A.2d at 1204 (alteration in original). "Term of confinement" was defined as follows:

(1) the length of the sentence, for a single sentence; or

(2) the period from the first day of the sentence that begins first through the last day of the sentence that ends last, for:
    (i) concurrent sentences;
    (ii) partially concurrent sentences;
    (iii) consecutive sentences; or
    (iv) a combination of concurrent and consecutive sentences.

Id. at 452-53, 780 A.2d at 1204 (quoting CS § 3-701).

sentence, the defendant would become eligible for double celling credits.  See id. at 456-

57, 780 A.2d at 1206.[20]

We do not perceive the Appellate Court's holding in Smith to be instructive in any

way here.  There is simply no analogy to be drawn between the Appellate Court's

construction of the phrases "term of confinement" in a prior version of CS § 3-702 and

"serving a sentence" under a prior version of a DOC regulation, and our interpretation of

the phrase "previously convicted of" in CS § 3-702(c).  The Appellate Court's holding in

Smith sheds no light on the meaning of the phrase "previously convicted" in CS § 3-702(c).

### 4. Rule of Lenity

To the extent that any conceivable argument could be made that applying the

traditional rules of statutory construction failed to resolve the ambiguity in construing CS

§ 3-702(c), the rule of lenity would apply.  See Clark, 473 Md. at 622, 251 A.3d at 1152;

Oglesby, 441 Md. at 681, 109 A.3d at 1151.  In this case, though, we have ascertained the

General Assembly's intent in enacting CS § 3-702(c) by reviewing its legislative history

and have concluded that the statute's legislative history supports Mr. Fenton's

interpretation of the statute.  In addition, under the rule of lenity, which "informs our

interpretation of a criminal statute when the standard tools of statutory interpretation fail

to discern the intent of the Legislature[,]" Gardner v. State, 420 Md. 1, 17, 20 A.3d 801,

811 (2011), were there any unresolved ambiguity in the interpretation of CS § 3-702(c), it

---

[20]Under the version of COMAR 12.02.06.05N(1)(a)-(c) in effect at the time, an inmate who was "serving a . . . [s]entence" for murder, rape, sex offenses, child abuse, drug trafficking, and other serious crimes was disqualified from earning special project credits for double celling.  Smith, 140 Md. App. at 453, 780 A.2d at 1204.

would be resolved in Mr. Fenton's favor.

## CONCLUSION

For the reasons stated herein, we hold that CS § 3-702(c) applies only where the previous conviction precedes the commission of the offense for the sentence that an incarcerated individual is serving. Under the statutory construction set forth above, Mr. Fenton will not have been "previously convicted" of a third-degree sexual offense involving a victim under the age of 16 at the time that he is serving the sentence for Count 8. We affirm the judgment of the Appellate Court, vacating the circuit court's judgment and remanding this case to the circuit court with instruction to remand the case to the Secretary to calculate Mr. Fenton's diminution of confinement credits for the sentence imposed as to Count 8 in Case No. C-22-CR-17-000076 in accordance with its opinion.

**JUDGMENT OF THE APPELLATE COURT OF MARYLAND AFFIRMED. PETITIONER TO PAY COSTS.**

Circuit Court for Washington County
Case No. C-21-CV-21-000372
Argued: May 6, 2025

IN THE SUPREME COURT

OF MARYLAND

No. 46

September Term, 2024

_____

SECRETARY, DEPARTMENT OF PUBLIC
SAFETY AND CORRECTIONAL SERVICES

v.

DALLAS FENTON

_____

Fader, C.J.
Watts
Booth
Biran
Gould
Eaves
Killough,

JJ.

_____

Concurring Opinion by Biran, J.

_____

Filed: July 11, 2025

Respectfully, I concur in the judgment and in the Court's opinion except for Parts G.2. through G.4. of the Discussion, to the extent the analysis in those sections suggests that deterrence was the General Assembly's predominant aim in enacting House Bill 599, now codified at CS § 3-702(c), and that the legislative history of CS § 3-702 resolves the ambiguity of the phrase "previously convicted." In my view, the legislative history also supports continued removal from society of repeat sex offenders and rehabilitation of such offenders as central purposes of CS § 3-702(c). These multiple purposes perpetuate the ambiguity, which can only be resolved using the rule of lenity. Thus, I end up in the same place as the Majority, but having taken a somewhat different path to get there.

The Majority's well-written opinion explains that, by eliminating the opportunity to earn diminution credits, the General Assembly "intended to deter repeat offenders from the commission of new third degree-sexual offenses." *See* Slip Op. at 25-26 (footnotes omitted). This interpretation is consistent with a February 23, 2010, letter from the bill's primary sponsor, Delegate Olszewski, to the House Judiciary Committee, in which he wrote: "Repealing diminution credits for repeat child sex offenders can *also* serve as a deterrent for re-offending." (Emphasis added).

The use of the word "also" is notable. It followed Delegate Olszewski's discussion of the General Assembly's "paramount responsibilit[y]" to protect children from sexual abuse – a responsibility he framed as particularly urgent in light of sex offenders' high recidivism rate, which he said was four times that of other crimes. For this reason, Delegate Olszewski drew a distinction between first-time sex offenders and repeat sex offenders: "While I appreciate the committee's reluctance to elimination diminution credits for first-

time offenders, I fail to see the justice in enabling second-time child sex offenders the ability to earn early release." In other words, Delegate Olszewski indicated that one of the reasons for his bill was to keep repeat offenders separated from society longer than first-time offenders. In addition, Delegate Olszewski stated that eliminating diminution credits would serve the goal of rehabilitation of repeat offenders by increasing access to treatment opportunities.

Thus, before mentioning deterrence in his February 23, 2010 letter, Delegate Olszewski highlighted the goals of continued separation from society and rehabilitation of repeat sex offenders. Both of these goals support a reading of CS § 3-702(c) that bars diminution credits for individuals with multiple convictions under CR § 3-307, even where the first conviction stems from conduct that occurred later in time. A second conviction, even if based on earlier conduct, may reveal a pattern of behavior not previously known, and thus warrant a longer period of incarceration to achieve these additional legislative objectives.[1]

---

[1] To put it concretely: imagine a man in his 30s who, on two occasions, engaged in sexual contact with two different children, both of whom were under the age of 16 at the time of the sexual contact – once in 2023 and again in 2024. The 2024 incident leads to a conviction under CR § 3-307 and a sentence. While the man is serving that sentence, the victim of the 2023 incident comes forward, resulting in a second conviction under the same statute. Under a deterrence-only theory, the man had not yet been held accountable at the time of the first sentence and thus had no opportunity to reform before the second. But under a continued separation/rehabilitation rationale, the later-discovered offense, though earlier in time, undermines the presumption that the individual is a suitable candidate for early release. In that light, CS § 3-702(c) arguably embodies a legislative judgment that serial offenders, regardless of when their crimes are discovered or prosecuted, should not receive diminution credits.

In sum, the legislative history reveals that multiple policy goals underlay CS § 3-702(c). With respect to an offender who is serving his second sentence for violating CR § 3-307, based on conduct he committed before the conduct that led to his first sentence under § 3-307, these policy goals run at cross-purposes. That is, while deterrence is not served by withholding diminution credits from such an incarcerated individual, the goals of continued separation from society (to protect potential future victims) and rehabilitation are advanced by not providing diminution credits.

In my view, the conflicting policy goals that are apparent in the legislative history prevent us from resolving the ambiguity in the language of CS § 3-702(c). In other words, this legislative history perpetuates the ambiguity. Because doubt remains after consulting legislative history, the rule of lenity provides a principled basis to guide this Court's analysis. On this basis, I respectfully concur in the judgment and, in part, in the Majority opinion.[2]

---

[2] If the General Assembly concludes that CS § 3-702(c) should be amended to give greater priority to the interests of continued separation from society and rehabilitation of repeat offenders, it of course may do so.